## HUMBLE PIPE LINE CO. *v.* WAGGONNER, SHERIFF.

No. 329. Argued March 4, 1964.—Decided March 23, 1964.*

---

*Together with No. 354, *Natural Gas & Oil Corp. et al.* v. *Waggonner, Sheriff,* also on certiorari to the same court.

*Leon O'Quin* argued the cause and filed briefs for petitioner in No. 329.

*Clarence L. Yancey* argued the cause for petitioners in No. 354. With him on the brief was *Clyde R. Brown.*

*Ferdinand A. Cashio,* Assistant Attorney General of Louisiana, argued the cause for respondent in both cases. With him on the briefs were *Jack P. F. Gremillion,* Attorney General of Louisiana, and *Carroll Buck,* First Assistant Attorney General.

*Solicitor General Cox* and *Roger P. Marquis* filed a brief for the United States in both cases, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The common question these cases present is whether the United States has such exclusive jurisdiction over a 22,000-acre tract of land in Louisiana on which the Barksdale Air Force Base is located that Louisiana is without jurisdiction to levy an ad valorem tax on privately owned property situated on the tract. The District Court and Court of Appeal of Louisiana upheld such a tax laid on certain oil drilling equipment and pipelines owned, used and kept by the petitioners on this federal enclave. 151 So. 2d 575. The Supreme Court of Louisiana denied review. 244 La. 463, 467, 152 So. 2d 561, 562. We granted certiorari to consider this federal question important to the United States. 375 U. S. 878.[1]

The United States acquired a fee simple title to the entire tract in 1930 by donations from the State of Louisiana,[2] the City of Shreveport, and the Bossier Levee District, a state agency, for the purpose of using the land as

---

[1] No issue concerning immunity of federal instrumentalities from state taxation, apart from the question of lack of state jurisdiction to tax within a federal enclave, has been raised here.

[2] Act No. 4, Louisiana Legislature, 1930.

a military base. The Government has spent huge amounts of money in creating and operating at Barksdale Field one of its most important military posts. When the State and its agencies gave the land to the United States, Louisiana law provided that the United States should have "the right of exclusive jurisdiction" over any land it "purchased or condemned, or otherwise acquired . . . for all purposes, except the administration of the criminal laws . . . and the service of civil process of said State therein . . . ."[3] All of the pipelines or equipment in question upon which the State's ad valorem tax has been imposed are, as the Louisiana District Court stated, "situated on the United States Military Reservation known as 'Barksdale Air Force Base'. . . ."

Article I, § 8, cl. 17, of the United States Constitution permits the United States to obtain exclusive jurisdiction over lands within a State. It provides:

"The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . . ."

Louisiana contends that the United States cannot "exercise exclusive Legislation" here because the land for the military base was donated, not "purchased" within the meaning of the constitutional provision. We cannot agree to such a constricted reading of that provision. Louisiana concedes that, as we pointed out in our recent

---

[3] Act No. 12, Louisiana Legislature, 1892, subsequently amended by Act No. 31, Louisiana Legislature, 1942, La. Rev. Stat. 1950, Tit. 52, c. 1, § 1. The deed to the United States was for a fee simple, and unlike that in *Palmer* v. *Barrett*, 162 U. S. 399, the authorizing statute contained no conditions and reserved only "the administration of the criminal laws . . . and the service of civil process."

holding in *Paul* v. *United States,* 371 U. S. 245, 264, the Government could, with the State's consent, have acquired exclusive jurisdiction by condemning the land. See also *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 141–142. This common-sense reading of the constitutional provision simply follows the interpretation given it long ago in *Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525, 538:

> "The essence of that provision is that the State shall freely cede the particular place to the United States for one of the specific and enumerated objects."

In accordance with this construction the Court in that case went on to emphasize that although the United States had not "purchased" Fort Leavenworth in the narrow trading sense of the term, the crucial question was whether Kansas had ceded exclusive jurisdiction over the fort. Likewise, we hold here that under Art. I, § 8, cl. 17, the United States acquired exclusive jurisdiction when the land was ceded to it with consent of the State (except for the State's express reservation as to civil and criminal process) just as if the United States had acquired its title by negotiation and payment of a money consideration.

Relying on the fact that the United States has leased the right to exploit parts of the reservation for oil and gas and for an oil pipeline, Louisiana contends that the Federal Government has thereby lost its power to exercise exclusive jurisdiction over those parts of the area. We cannot agree. We did hold in *S. R. A., Inc.* v. *Minnesota,* 327 U. S. 558, that where the United States, while retaining what was in substance a mortgage, had sold land and buildings formerly used for governmental purposes it thereby in effect surrendered its former exclusive jurisdiction, leaving that property taxable by the State. But that case does not control the present situation, for here the Government continues to hold all the land subject to

its primary jurisdiction and control.[4] This Court has previously held that exclusive federal jurisdiction was not lost either by lease of property for commercial purposes within an enclave, *Arlington Hotel Co.* v. *Fant,* 278 U. S. 439, or by conveying a right of way to a railroad across a reservation, *United States* v. *Unzeuta,* 281 U. S. 138. And in holding that exclusive jurisdiction was not lost over a part of a reservation used for farming, this Court recognized the responsibility of the Executive Department of the Government to determine what land it will acquire and hold for military purposes. *Benson* v. *United States,* 146 U. S. 325, 331. There is no evidence here which would justify a court in deciding that the Government does not need to keep all of this tract intact, ready for use when needed for the highly important military purposes to which it has been dedicated.

Louisiana further contends that this record shows that the Government did not intend to accept exclusive jurisdiction here. It is the established rule that a grant of jurisdiction by a State to the Federal Government need not be accepted and that a refusal to accept may be proved by evidence. *Atkinson* v. *State Tax Comm'n,* 303 U. S. 20, 23; *Silas Mason Co.* v. *Tax Comm'n,* 302 U. S. 186, 207–209. The State's contention is based chiefly on a statement that Barksdale Air Force Base buys public utility services from the State or a state instrumentality at its gate and pays to the State's school system a per capita charge for each child of a serviceman attending the State's schools. We think these circumstances wholly fail to show a rejection by the Government of the State's cession of exclusive jurisdiction over the base.[5]

---

[4] The fact that the oil and gas leases were issued by the Department of the Interior rather than the Department of the Air Force does not affect the exclusive jurisdiction of the United States.

[5] But cf. *International Business Machines Corp.* v. *Ott,* 230 La. 666, 701–702, 89 So. 2d 193, 205–206.

Nor do we think it possible to find a refusal or an abandonment of exclusive federal jurisdiction from the fact that the oil and gas leases provided that the companies should "pay when due, all taxes lawfully assessed and levied under the laws of the State or the United States upon improvements, oil and gas produced from the lands hereunder, or other rights, property, or assets of the lessee . . . ." It is by no means sure that a federal agency making an oil and gas lease could waive the Government's exclusive jurisdiction over a federal reservation, but even if it could we see nothing more in this standard contractual provision than a precaution on the Government's part to guard itself against liability for payment of any state taxes "lawfully assessed" against its lessee. Cf. *United States* v. *County of Allegheny,* 322 U. S. 174, 189. A contractual requirement to pay taxes lawfully owing, standing alone, cannot be read as manifesting a purpose of the Government to abandon exclusive jurisdiction over one of its important military enclaves. When Congress has wished to allow a State to exercise jurisdiction to levy certain taxes within a federal enclave it has specifically so stated, as in the Buck Act, 4 U. S. C. §§ 104–110.

The judgments are reversed and the cases remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*