CRAIN, Judge.
Barksdale Federal Credit Union (Barks-dale) is the lessee of certain immovable property located on the grounds of Fort Polk, a federal enclave, in Vernon Parish, Louisiana. The lease was executed by the Department of the Army, for the purpose of allowing Barksdale to establish and locate a branch office on the military base. Barksdale agreed to lease the unimproved immovable property and, at Barksdale’s expense, to construct and maintain a credit union building and related facilities. The lease is for a twenty-five year term and provides that upon cancellation or termination of the lease, at the option of the government the government shall acquire title to all improvements on the leased premises.
The building, furniture and fixtures owned by Barksdale were apparently listed on the ad valorem tax rolls for 1985 by the Vernon Parish Tax Collector. Thé furniture and fixtures were valued at $14,780, with a tax owing of $2,425.40.[1] The commercial improvements were valued at $73,-500 with a tax owing of $12,061.35. The taxes were paid by Barksdale under protest.
This action was filed in the Nineteenth Judicial District Court under La.R.S. 47:2110. Barksdale seeks to have the assessments removed from the Vernon Parish tax rolls and the return of its money paid under protest, with interest. The district court ordered the removal of the assessments at issue from the Vernon Parish *897 tax rolls and ordered the return to Barks-dale of the tax money paid under protest. From this judgment, intervenor, the Tax Assessor for Vernon Parish, appeals.-
The sole issue on appeal is whether Barksdale is subject to the ad valorem tax on its immovable property which is located within a federal enclave.
Under Louisiana law, the immovable property owned by a federal credit union is subject to ad valorem taxation. La. Const, art. VII, §§ 18, 20, 21; La.R.S. 47:1702, 1703, 2322 C and D. However, with reference to military enclaves, Congress-is constitutionally authorized:
To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.
U.S. CONST, art. I, § 8, cl. 17. Fort Polk is a military reservation and appellant has not contested the exclusive legislative authority of Congress over the military base.
State taxation of private interests within a federal enclave such as state sales, use and income taxes is permissible when consented to by Congress. See e.g., 4 U.S.C. § 104 et seq. The lease of federally owned property by the federal government to a private lessee is not sufficient to constitute an abandonment or waiver of the government’s exclusive legislative power and jurisdiction over that property. Arlington Hotel Co. v. Font, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447 (1929).
In order to determine whether Congress has consented to the state taxation of property owned by a federal credit union located within a federal enclave, we must refer to the applicable statutes, 10 U.S.C. § 2667 and 12 U.S.C. § 1768. In 10 U.S.C. § 2667(a) Congress provided that the Secretary of a military department may lease nonexcess property which is under the control of that department when in the public interest or for purposes of national defense. 10 U.S.C. § 2667 applies generally to nonexcess property under the control of a department of the military, including that property located within a federal enclave which is under the exclusive legislative authority of Congress pursuant to U.S. Const, art. I, sec. 8, cl. 17.,
Under 10 U.S.C. § 2667(e):
The interest of a lessee of property leased under this section may be taxed by State or local governments. A lease under this section shall provide that, if and to the extent that the leased property is later made taxable by State or local governments under an Act of Congress the lease shall be renegotiated.
The permission to tax under 10 U.S.C. § 2667(e) extends to the interests of all lessees created pursuant to 10 U.S.C. § 2667. 10 U.S.C. § 2667 is not an unequivocal expression of Congressional consent to state taxation of a lessee’s interest in property located within a federal enclave. Thus, it is appropriate to look to the legislative history of this statute to determine Congressional intent. “The legislative history indicates a concern about loss of revenue to the States and a desire to prevent unfairness toward competitors of the private interests that might otherwise escape taxation.” Offutt Housing Co. v. County of Sarpy, 351 U.S. 253, 260, 76 S.Ct. 814, 818-819, 100 L.Ed. 1151, 1159 (1955). Federal credit unions are constitutionally created entities for which Congress has the power to prescribe tax immunity. U.S. Const., art. I, § 8; Federal Land Bank of Saint Paul v. Bismarck Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65, (1941). But, in the Federal Credit Union Act, 12 U.S.C. 1751 et seq., Congress stipulated:
The Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authori *898 ty; except that any real property and any tangible personal property of such Federal Credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed.
12 U.S.C. § 1768.
Federal credit unions are not under the exclusive legislative power and jurisdiction of Congress except when located within a federal enclave. Congress has chosen to specifically subject immovable property owned by federal credit unions to state taxation. 12 U.S.C. § 1768. Although 12 U.S.C. § 1768 does not specifically refer to property located in an area subject to exclusive federal legislation, such as that located on a military base, when 12 U.S.C. § 1768 is read in para materia with 10 U.S.C. § 2667 we construe the statutory language to mean that Congress has permitted state taxation in the instant case. See Offutt Housing Co., 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151.[2]
Accordingly, we reverse the judgment of the trial court. Costs are assessed against appellee.
REVERSED AND RENDERED.

. Appellant concedes in brief that no tax is owed on the furniture and fixtures owned by Barksdale. Thus, only the tax levied on the immovable property is at issue on appeal.

. Humble Pipe Line Co. v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964), which was relied on by the trial court, is distinguishable from the case before us. In Humble, the federal government executed a mineral lease and the state attempted to tax the oil drilling equipment and pipelines owned, used and stored by the mineral lessee within a federal enclave. However, in Humble Congress had not statutorily consented to state taxation of drilling equipment and pipelines owned and used by a private mineral lessee of federally owned property. Additionally, the Humble lease was not executed pursuant to 10 U.S.C. § 2667.