UNITED STATES of America,
Plaintiff,

v.

Kristen GILBERT, Defendant.

Crim. No. 98–30044–MAP.

United States District Court,
D. Massachusetts.

April 20, 2000.

David P. Hoose, Katz, Sasson & Hoose, Springfield, MA, Harry L. Miles, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for Kristen Gilbert, Defendant.

Michael Labrie, Labrie & Pouliot, Chicopee, MA, David M. Allen, James L. Komie, Schuyler, Roche & Zwirner, Chicago, IL, for Joint Com'n on Accreditation of Healthcare Organizations, Interested Party.

Joseph P. Pessolano, Kelly, Pessolano, Dusel & Murphy, Springfield, MA, for Republican Co., Interested Party.

William M. Welch, II, Ariane D. Vuono, U.S. Attorney's Office, Springfield, MA, for U.S., Plaintiff.

*MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH THIRTEEN FOR LACK OF SUBJECT MATTER JURISDICTION*

PONSOR, District Judge.

## I. INTRODUCTION

On May 13, 1998, a federal grand jury returned a fifteen count indictment against defendant Kristen Gilbert. Counts One through Thirteen charge defendant with four counts of first degree murder, four counts of attempted murder, and six counts of assault with intent to commit murder. These crimes were allegedly committed on or about August 21, 1995 through September 26, 1996 at the North-ampton Veterans Affairs Medical Center in Leeds, Massachusetts ("VAMC").

Defendant Gilbert now moves this court to dismiss Counts One through Thirteen for lack of subject matter jurisdiction on the ground that the VAMC was not within the jurisdiction of the United States. For the reasons stated below, defendant's motion will be denied.

## II. BACKGROUND

In May, 1922, President Harding approved the construction of the VAMC. Shortly after, on July 29, 1922, Fred and Cora Farrar deeded in fee simple two tracts of land to the United States upon which the VAMC was to be built. By 1924, eleven buildings were constructed on this land and the VAMC officially opened on April 25, 1924. It has operated continuously as a veteran's hospital at this location since that time.

On May 28, 1926, the Commonwealth of Massachusetts approved and consented to the purchase of this land by the United States. *See* Massachusetts Public Acts of 1926, ch. 386, § 1. The Commonwealth expressly "granted and ceded to the United States of America" jurisdiction over the land. However, it expressly reserved concurrent jurisdiction to execute civil and criminal processes on the land, and it limited its cession of exclusive jurisdiction to the extent that "the exclusive jurisdiction shall revert in the Commonwealth whenever the area so acquired shall cease to be used for purposes of national defense." *Id.*

In May, 1974, the Department of Veterans Affairs (the then Veterans Administration) explored the possibility of ceding some of its exclusive jurisdiction back to the states to establish concurrent jurisdiction to insure the immediate assistance and availability of state and local agencies in emergency situations. On July 21, 1975, the Department formally offered to retrocede some of its exclusive jurisdiction over the VAMC to establish concurrent jurisdiction between the United States and the

Commonwealth of Massachusetts. On August 6, 1975, the then Governor Michael Dukakis formally accepted the offer, and on July 19, 1976, Dukakis confirmed acceptance of retrocession pursuant to Chapter 221 of the Massachusetts Public Acts of 1976.[1]

## III. DISCUSSION

Gilbert argues that this court does not have subject matter jurisdiction over this case for three reasons. First, she argues that the United States did not *acquire* exclusive jurisdiction over the VAMC property because it took the property as a proprietor, not as a sovereign. She contends that the United States maintained the parcel as a proprietor only because the purchase of the land and the state's cession of the land were not contemporaneous, and because the United States then failed to accept this delayed cession from the Commonwealth. Second, Gilbert argues that even if the government was not required to actually accept jurisdiction, it failed to comply with the Commonwealth's own statutory requirements for ceding jurisdiction. Third, she argues that any jurisdiction accepted in 1922 reverted to the state in 1926 in accordance with the 1926 Public Act, which conditioned acceptance on using the land for national defense. Finally, Gilbert also contends that the court is not permitted to take judicial notice of jurisdiction because the parties dispute the effect of the government's failure to accept the delayed cession. The following will discuss these arguments in turn.

Counts One through Thirteen charge Gilbert with first degree murder in violation of 18 U.S.C. § 1111, attempted murder in violation of 18 U.S.C. § 1113, and assault with intent to commit murder in violation of 18 U.S.C. § 113. An element of each offense is that it occurred "within the special maritime and territorial jurisdiction of the United States." The term "special maritime and territorial jurisdiction of the United States", as used for these offenses, includes in part:

> Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, *or* any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3) (emphasis added).

▆▆▆ The second clause ("or any place purchased ...") "covers cases where exclusive jurisdiction is acquired by the United States pursuant to Article I, § 8, cl. 17, of the United States Constitution." *Bowen v. Johnston,* 306 U.S. 19, 22, 59 S.Ct. 442, 83 L.Ed. 455 (1939). Article I, § 8, cl. 17 "permits the United States to obtain exclusive jurisdiction over lands within a State." *Humble Pipe Line Co. v. Waggonner,* 376 U.S. 369, 371, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964). It provides:

> The Congress shall have Power ... To exercise exclusive Legislation[2] in all Cases whatsoever ... over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[3] ....

U.S. CONST. Art. I § 8, cl. 17. Under Art. I, § 8, cl. 17, it is well-settled that the United States acquires exclusive jurisdiction "when the land [is] ceded to it with

---

1. This Act empowered the Governor to accept retrocession of the United States' exclusive jurisdiction over land that the Commonwealth had previously ceded to the United States. *See* MASS. GEN. LAWS. ch. 1, § 7A.

2. The term "exclusive Legislation" is the equivalent of "exclusive jurisdiction." *Surplus Trading Co. v. Cook,* 281 U.S. 647, 652, 50 S.Ct. 455, 74 L.Ed. 1091 (1930).

3. The term "other needful Buildings" has been broadly interpreted "as embracing whatever structures are found to be necessary in the performance of the functions of the Federal Government." *James v. Dravo Contracting, Co.,* 302 U.S. 134, 143, 58 S.Ct. 208, 82 L.Ed. 155 (1937).

consent of the State (except for the State's express reservation as to civil and criminal process)." *Humble Pipe Line,* 376 U.S. at 373, 84 S.Ct. 857.. *See also Paul v. United States,* 371 U.S. 245, 264, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Surplus Trading Co. v. Cook,* 281 U.S. 647, 652, 50 S.Ct. 455, 74 L.Ed. 1091 (1930); *Fort Leavenworth R. Co. v. Lowe,* 114 U.S. 525, 530, 5 S.Ct. 995, 29 L.Ed. 264 (1885).

■ Absent consent by the state, the United States does not take jurisdiction over the property. Instead it is simply an ordinary proprietor of the property. *See Paul,* 371 U.S. at 266–67, 83 S.Ct. 426.

. ■ Defendant Gilbert does not dispute the fact that the United States properly purchased the land in 1922, and that the Commonwealth consented to this purchase pursuant to the 1926 legislative act, which ceded exclusive jurisdiction to the United States. Instead, she argues that because the Commonwealth did not consent contemporaneously to the purchase, and because there is no evidence that the United States explicitly accepted jurisdiction after the Commonwealth ceded it in 1926, the United States acquired and has maintained the land as a proprietor only, without acquiring any jurisdiction. Moreover, according to the defendant, the transactions in the 1970s between the Veterans Department and the then Governor of Massachusetts do not, despite their obvious appearance, manifest jurisdiction in the federal government since jurisdiction never properly existed in the first place.

The defendant's first argument is flawed for two reasons. First, defendant cites no legal authority, nor does the court's research reveal any such authority, for the proposition that a state's consent must be *contemporaneous* with the United States' purchase of the land. In fact, in *Fort Leavenworth R. Co. v. Lowe,* 114 U.S. 525,

5 S.Ct. 995, 29 L.Ed. 264 (1885), a seminal case holding that a state cannot tax a private company's property located on a federal military reservation, the Supreme Court found that the state of Kansas, pursuant to Art. I, § 8, cl. 17, properly ceded exclusive jurisdiction to the United States by a legislative act in 1875 even though the United States had acquired the land in 1803, and maintained it as a proprietor until 1875. *Id.* at 527–528, 5 S.Ct. 995.[4]

■ *Fort Leavenworth* and subsequent Supreme Court precedent also undermine Gilbert's contention that exclusive jurisdiction did not pass to the United States upon cession by the Commonwealth because there is no evidence that the United States explicitly accepted this jurisdiction. *Fort Leavenworth* established the principle, followed until 1940,[5] that formal "acceptance of [jurisdiction] is to be presumed in absence of any dissent" by the United States when such a cession "conferred a benefit" to the federal government. *Fort Leavenworth,* 114 U.S. at 528, 5 S.Ct. 995. *See also S.R.A., Inc. v. State of Minn.* 327 U.S. 558, 563 & n. 7, 66 S.Ct. 749, 90 L.Ed. 851 (1946); *Humble Pipe Line Co. v. Waggoner,* 376 U.S. 369, 371, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964). Thus, prior to 1940, it was well-settled that acceptance by the federal government is presumed when the purchased land conferred a benefit on it, and when the transfer of jurisdiction was not contrary to its interests. *See James v. Dravo Contracting Co.,* 302 U.S. 134, 141–42, 146–49, 58 S.Ct. 208, 82 L.Ed. 155 (1937); *Silas Mason Co. v. Tax Commission of State of Washington,* 302 U.S. 186, 197–99, 58 S.Ct. 233, 82 L.Ed. 187 (1937). *See also United States v. Johnson,* 994 F.2d 980, 984 (2d Cir.1993).

A number of United States Courts of Appeal have followed this principle in

4. Also, as the government correctly points out, there are both practical and logistical reasons for a state to withhold its consent: a state may want to wait to ensure that the federal government uses the land for its stated purpose, and state legislatures convened only part-time or for special sessions in the early twentieth century.

5. In 1940 Congress enacted 40 U.S.C. § 255, which requires government agencies to follow a formal method of acceptance of jurisdiction from a state.

criminal cases where defendants have challenged the jurisdiction of property purchased by the United States and ceded to it prior to 1940. For example, in *United States v. Johnson,* 426 F.2d 1112, 1112 (7th Cir.1970), the court upheld burglary convictions at a Veterans Administration Hospital in Downey, Illinois, despite defendant's contention that the federal government never actually accepted jurisdiction. The court found that although "the federal government never accepted in writing this cession of jurisdiction, ... the government did accept jurisdiction ... on the basis of the Supreme Court decision in *Fort Leavenworth R. Co. v. Lowe,* 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885), which recognized a presumptive acceptance of jurisdiction if the use of the land conferred a benefit upon the United States." *Id.*

Similarly, in *United States v. Redstone,* 488 F.2d 300, 302 (8th Cir.1973), the court upheld an assault with a dangerous weapon conviction despite defendant's contention that Fort Lincoln Military Reservation, where the offense occurred, was not within federal jurisdiction because the United States did not formally accept it from North Dakota. The court noted that "prior to 1940, acceptance was apparently presumed in the absence of evidence to the contrary," and held that given the fact the United States purchased the land in 1895 and the state consented it is "plain that the offence occurred within the territorial jurisdiction of the United States." *Id.* at 302. *See also Markham v. United States,* 215 F.2d 56, 57 (4th Cir.1954) (affirming murder conviction on federal property by holding that acceptance of jurisdiction over an Army Base acquired in 1919 "is presumed under the law then applicable").

In this case, there is no dispute that the VAMC land was properly deeded to the United States in 1922, and that the Commonwealth properly ceded jurisdiction by statute in 1926. Moreover, there can be no dispute that the United States has benefitted from the use of this purchased land and the cession of jurisdiction was not contrary to its interests. After purchasing the land, the United States appropriated money to build a hospital for veterans of the Armed Services, and it has maintained this hospital for over seventy-five years. Thus, since there is no need for either a contemporaneous cession of jurisdiction by the state, or explicit acceptance of jurisdiction by the federal government, this court will find that the United States did accept jurisdiction in 1926 over the land on which the VAMC sits.

■ In her second argument, Gilbert argues that even if affirmative acceptance was not required at the time the federal government purchased the land, it nevertheless failed to comply with the Commonwealth's own requirement for obtaining consent to transfer jurisdiction, namely, that the government must file a "suitable plan" for the tract of land in the office of the State Secretary within one year of purchase of the title. *See* MASS. GEN. LAWS ch. 1, § 7. Because the Public Act of 1926 "did not obviate a need to submit a tract plan under Section 7," defendant contends that submission of a plan remained a condition of acceptance that the government failed to fulfill. Defendant's Memorandum in Support, Docket No. 169 at 5–6.

Defendant's own research, however, revealed that the Secretary of State files contained a copy of Chapter 386 of the Massachusetts Public Acts of 1926, which incorporated the description of the purchased parcels that appeared within the title deeds. That description appears sufficient to satisfy the "suitable plan" requirement of Section 7. But even if it is not, the absence of a suitable plan cannot defeat jurisdiction given the government's control and uninterrupted use of this property since 1926. *See Krull v. United States,* 240 F.2d 122, 127–128 (5th Cir. 1957) (a missing title report will not defeat jurisdiction when government had possession and control over land for over twenty-eight years).

■ In her third argument, Gilbert contends that any jurisdiction accepted in

1922 reverted to the state in 1926 in accordance with the 1926 Public Act, which conditioned acceptance on use of the land for national defense. The second section of the Act, after ceding jurisdiction to the United States, further states:

> Provided, that the exclusive jurisdiction shall revert to and revest in the Commonwealth whenever the area so acquired shall cease to be used for purposes of national defense.

Massachusetts Public Acts, 1926, ch. 386 § 2. According to Gilbert, a veteran's hospital is not "for purposes of national defense," because that phrase suggests a strictly military application, and the veteran's hospital performs a medical function. Since the land has only been used for a veteran's hospital and since the hospital has never been used for "military" purposes, Gilbert maintains that jurisdiction revested to the Commonwealth pursuant to the 1926 Act.

Gilbert's argument fails because it would require an incomprehensible reading of the Commonwealth's Public Act of 1926. The 1926 Public Act, as noted, ceded jurisdiction to the United States over the land in which the VAMC was *already* built. It contained a proviso that required the land be reverted back to the Commonwealth "whenever the area so acquired shall cease to be used for purposes of national defense." *Id.* Given that at the time the Act was passed in 1926, the United States had constructed eleven buildings on the property, which had been open since 1924, if the proviso was meant to exclude the VAMC, then the Act would have ceded jurisdiction and on the same day would have taken it away. To avoid such an incongruent reading of the language, this court must assume that the phrase "for purposes of national defense" was obviously meant to include the VAMC. This construction is also consistent with common sense; a VA hospital obviously serves the interests of national defense. Given this, jurisdiction did not revert back to the Commonwealth in 1926, but remained in the exclusive jurisdiction of the United States.

Finally, Gilbert also contends that this court cannot take judicial notice of jurisdiction over VAMC because "the parties dispute the effect of the government's failure to accept the delayed cession from the Commonwealth in 1926." Defendant's Supplemental Memorandum, Docket No. 224 at 3. The government, on the other hand, contends that the court may take judicial notice, with the proviso, articulated recently by the First Circuit in *United States v. Bello*, 194 F.3d 18, 23–24 (1st Cir.1999), that the court instruct the jury, pursuant to FED.R.EVID. 201(g), "that [the jury] may, but is not required to, accept as conclusive any fact judicially noticed." *Bello*, 194 F.3d at 24 (quoting Rule 201(g)) (holding that "trial court properly exercised its discretion in taking judicial notice of the jurisdictional fact" that a prison was within the jurisdiction of the United States).

Defendant's contention that judicial notice is improper because the parties disagree over the effect of the government's failure to accept formally jurisdiction is misplaced. This disagreement is a legal one, and the court has found in favor of the government. It is undisputed that the United States purchased the land, that the Commonwealth consented to the purchase and formally ceded it to the United States, that the United States benefitted from the purchased land and the cession of jurisdiction was not contrary to its interest.

Thus, pursuant to *Bello*, the court will take judicial notice of the fact that the VAMC is within the territorial jurisdiction of the United States. Judicial notice is proper pursuant Rule 201(b)(2) of the Federal Rules of Evidence when it is based on "sources whose accuracy cannot be reasonably questioned." Given the undisputed facts recited above, a sufficient basis exists for judicial notice under Rule 201(b)(2).

## IV. CONCLUSION

The United States purchased the land upon which the VAMC sits in 1922, and the Commonwealth of Massachusetts by

legislative act consented to this purchase and ceded exclusive jurisdiction to the United States in 1926. Moreover, under the law at the time, the United States accepted this jurisdiction because it benefitted from the purchased land, and the transfer of jurisdiction was not contrary to its interests. Thus, this court finds that the United States has jurisdiction over this case because the VAMC, where the alleged crimes took place, was within the territorial jurisdiction of the United States. In accordance with controlling First Circuit law, the court will take judicial notice of this fact. Defendant's Motion to Dismiss Counts One through Thirteen For Lack of Subject Matter Jurisdiction (Docket No. 162) is hereby DENIED.

It is so ordered.