**MRT EXPLORATION COMPANY, et al., Plaintiffs-Appellants,**

v.

**Shirley McNAMARA, Secretary, Louisiana Department of Revenue and Taxation, Defendant-Appellee.**

**Nos. 83–4238, 83–4239.**

United States Court of Appeals, Fifth Circuit.

May 3, 1984.

Shotwell, Brown & Sperry, James H. Napper, II, Monroe, La., for plaintiffs-appellants.

Malcolm S. Murchison, Joseph L. Hargrove, Jr., Shreveport, La., for Pennzoil Producing Co.

J. Edgerton Pierson, Jr., Shreveport, La., for Arkla.

Pugh & Pugh, Robert G. Pugh, Jr., Robert G. Pugh, Shreveport, La., for defendant-appellee. .

Before GEE, POLITZ and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiffs appeal the district court's dismissal of their complaint for lack of subject matter jurisdiction. The district court based dismissal on the jurisdictional bar of the Tax Injunction Act of 1937, 28 U.S.C. § 1341. We affirm.

During the 1950's and 1960's, the plaintiff corporations entered into oil and gas leases with the federal government. The leases encompassed both privately owned property and acreage within Barksdale Air Force Base, both in the State of Louisiana. Barksdale is located on a 22,000 acre tract of land which was acquired by the federal government in 1930 for the purpose of using the land as a federal enclave, to wit, a military base. The United States acquired a fee simple title to the tract by donations from the State of Louisiana, the City of Shreveport, and the Bossier Levee District, a state agency. The authorizing statute expressly reserved to the State the administration of the criminal laws and the service of civil process. The statute provided that the United States should have "the right of exclusive jurisdiction" over any land purchased, condemned, or otherwise acquired "for all purposes except the administration of the criminal laws ... and the service of civil process of said State therein...." [1]

---

[1] Act No. 12, Louisiana Legislature, 1892 (current version at LSA–R.S. 52:1 (West Supp. 1984)).

Pursuant to the leases between plaintiffs and the United States the federal government was to receive royalty payments for natural resources extracted from the production units which included portions of Barksdale. In September 1982 a representative of defendant McNamara, the Secretary of the Louisiana Department of Revenue and Taxation, informed plaintiffs that Louisiana would require severance tax payments for natural resources severed from the federal lands within Louisiana except for the royalty interest retained by the federal government. Plaintiffs have paid under protest the severance taxes assessed by defendant since October 1982.[2] In the instant proceedings plaintiffs seek to recover the severance taxes paid under protest and request a declaratory judgment that the Louisiana severance tax statutes are unconstitutional insofar as they are applied to oil and gas production from Barksdale.[3] The district court granted defendant's motion to dismiss, holding that the Tax Injunction Act of 1937, 28 U.S.C. § 1341, bars plaintiffs' refund suit in federal court.

Plaintiffs assert federal question jurisdiction under 28 U.S.C. § 1341. Defendants do not challenge the existence of a substantial federal question[4] but instead contend that federal jurisdiction is prohibited pursuant to section 1341.

28 U.S.C. § 1341 states: "The [federal] district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Plaintiffs attempt to escape the jurisdictional bar of section 1341 by asking this Court to accept one of two propositions: (1) there is no "plain, speedy and efficient remedy" in the Louisiana state courts because the United States has exclusive jurisdiction over the property and claims in dispute pursuant to art. I, § 8, cl. 17 of the United States Constitution or, in the alternative, (2) a "federal instrumentality" exception to the Act applies. The district court rejected both of these contentions. We affirm the district court.

Plaintiffs' argument that section 1341 is inapplicable because no adequate state remedy exists hinges on the assumption that the United States has exclusive judicial jurisdiction over federal military enclaves such as Barksdale pursuant to art. I, § 8, cl. 17 of the United States Constitution. It provides:

The Congress shall have Power ... To exercise exclusive Legislation in all Cases whatsoever ... over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings....

Plaintiffs' contention flies in the face of the clear wording of the clause which grants Congress the power "[t]o exercise exclusive Legislation." That this clause deals with legislative jurisdiction is reinforced by the fact that article I is the article of the Constitution which deals with the powers

---

**2.** The State began collecting the taxes after passage of Act No. 510, Louisiana Legislature, 1982, which amended LSA–R.S. 52:1 (1950) (originally enacted as Act No. 12, Louisiana Legislature, 1892), *see ante* note 1. The 1982 amendment specifically authorizes the levy of severance taxes against any lessee of the United States:

B. The property shall be exempt from all taxation, assessment, or charge levied under authority of the state. Nothing herein shall be construed or held to affect the rights of Louisiana or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon the sever-

ance of natural resources, or other rights, property, or assets of any lessee of the United States.

**3.** Plaintiffs have filed parallel suits in state court seeking the same relief.

**4.** The federal question presented involves the constitutionality of applying the Louisiana severance tax to minerals extracted from Barksdale in light of art. I, § 8, cl. 17 of the United States Constitution which confers exclusive legislative jurisdiction on the United States.

of Congress rather than the powers of the federal judiciary.

Nor does *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964), cited by plaintiffs as conclusively establishing the exclusive judicial jurisdiction of the United States over Barksdale, support plaintiffs' position. In *Humble Pipe Line* the Supreme Court held that the State of Louisiana did not have jurisdiction to levy an ad valorem tax on oil drilling equipment and pipelines owned by private companies and situated on Barksdale. The Court reasoned that art. I, § 8, cl. 17 of the Constitution vests exclusive jurisdiction in the federal government and that "[w]hen Congress has wished to allow a State to exercise jurisdiction to levy certain taxes within a federal enclave it has specifically so stated, as in the Buck Act. 4 U.S.C. §§ 104–110." 84 S.Ct. at 860–61. *Humble Pipe Line* only speaks to the merits of the instant case. Nowhere does the Court discuss whether federal subject matter jurisdiction exists to litigate the constitutionality of applying a state ad valorem tax to the privately owned property involved. Indeed, *Humble Pipe Line* came to the Supreme Court through the Louisiana court system. Consequently, the jurisdictional question before this Court would not have arisen. *Humble Pipe Line* in no way speaks to, much less resolves, the question of the existence of federal subject matter jurisdiction in the instant case.

 The jurisdictional question before us is, however, conclusively resolved by one of this Circuit's own cases. In *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 330 (5th Cir.1979), this Court held that section 1341 is "a jurisdictional prohibition on the maintenance of tax refund suits in federal courts, whenever a state remedy that is plain, speedy and efficient is available."[5] Plaintiffs attempt to distinguish *United Gas* because it did not involve the

exclusive jurisdiction of the United States over Barksdale. The argument that *United Gas* should not control the instant case because *United Gas* did not involve a federal military enclave is unpersuasive. The *United Gas* opinion did not purport to rely on any particular fact pattern. In that case, this Court relied on the history of section 1341, judicial precedent, and concepts of federalism to conclude that the section was "a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Id.* at 326. This Court repeatedly referred to suits that impede state tax administration and to suits for tax refund without attempting to make any further limitations. We stated: "[W]e hold that tax refund suits fall within the statute's prohibition." *Id.* at 324. We further stated: "[W]e conclude that it is the duty of federal courts, in actions for the refund of state taxes, to defer to state administrative and judicial remedies where the state remedy is 'plain, speedy and efficient.' " *Id.* at 327. We concluded that the policy of section 1341—that judicial threats to a state's tax system should come only from state courts when the state provides taxpayers a remedy that is plain, speedy and efficient— "would be severely frustrated by opening jurisdiction to the district courts to hear refund suit challenges to the validity of state taxes." *Id.* at 330.

The instant case falls squarely within the holding in *United Gas;* it is clearly a suit for the refund of state taxes. Significantly, the Louisiana Department of Revenue and Taxation is taxing only the revenues of the plaintiffs and not the royalty going to the United States. The fact that Barksdale is a federal military enclave does not in any way undermine the analysis employed in *United Gas.* There is no reason why Louisiana should be any less free from federal interference in the administration of its

5. Plaintiffs in the instant case do not challenge the adequacy of the Louisiana remedy itself. The general rule is that the availability of a refund action satisfies § 1341's requirement that an adequate state remedy exists. *United Gas*, 595 F.2d at 331. The Louisiana refund proce-

dure provides taxpayers with a plain, speedy, and efficient remedy in the Louisiana courts. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *United Gas*, 595 F.2d at 331.

own fiscal affairs because these plaintiffs extracted minerals which came from beneath federal lands. In *United Gas* we looked to the fact that a tax refund suit in Louisiana places tax funds in escrow pending judicial resolution of the taxpayer's protest and therefore effectively denies the State the use of the tax monies until the refund suit is finally resolved.[6] We stated in *United Gas* that:

> [t]he central thrust of section 1341 is that if the fiscal machinery of a state government is to be jammed by the interdiction of a court denying a state its tax revenues, that interdiction ought properly come only from the courts of the state itself. The maintenance of tax refund suits in ·federal courts runs full force against that statutory purpose.

*Id.* at 328–29. In *United Gas*, however, we did not rely solely on the Louisiana provision for the escrow account in order to reach the conclusion that tax refund suits in federal court contravene the purpose of section 1341. We specifically stated:

> If tax refund suits were not barred by section 1341, *they would be maintainable in federal courts any time a federal question was involved in the dispute* or any time the plaintiff.was a nonresident able to invoke diversity jurisdiction. We have previously noted that one of the legislative purposes in enacting section 1341 was the elimination of disruption in state and local financing by out-of-state corporations bringing suit in federal court. *Hargrave v. McKinney*, 413 F.2d 320, 325–26 (5th Cir.1969).

*Id.* at 329 (emphasis added). The principle relied upon in *United Gas*—that the judicial interpretation and enforcement of state tax law should rest with the state courts alone—applies in this refund suit for a state severance tax applied only to revenues of the plaintiff oil and gas corporations on minerals extracted from a federal enclave.

Nor can plaintiffs rely on *Mississippi River Fuel Corp. v. Cocreham*, 382 F.2d 929 (5th Cir.1967), *cert. denied sub nom., Mouton v. Mississippi River Fuel Corp.*, 390 U.S. 1014, 88 S.Ct. 1264, 20 L.Ed.2d 164 (1968), and *Shell Oil Co. v. Mouton*, 410 F.2d 715 (5th Cir.1969) as support for their contention that this Court has exclusive subject matter jurisdiction. The *United Gas* opinion reaffirmed the holding in *Bland v. McHann*, 463 F.2d 21 (5th Cir. 1972) *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), that section 1341 was "an explicit congressional limitation on the jurisdiction of the federal courts" and expressly deprecated the precedential value of *Mississippi River Fuel* and *Shell Oil:*

> United's reliance on two decisions prior to *Bland* is also misplaced. In *Mississippi River Fuel Corporation v. Cocreham*, 382 F.2d 929 (5th Cir.1967), and *Shell Oil Company v. Mouton*, 410 F.2d 715 (5th Cir.1969), this court affirmed decisions on the merits in Louisiana tax refund suits without invoking section 1341's jurisdictional bar. Those two decisions must be considered of limited precedential importance, however, because in neither opinion was the problem of section 1341 as a limitation on federal jurisdiction discussed. *Shell Oil* did not men-

---

**6.** LSA–R.S. 47:1576 provides:

Any taxpayer protesting the payment of any amount found due by the secretary of the Department of Revenue and Taxation, or the enforcement of any provision of the tax laws in relation thereto, shall remit to the Department of Revenue and Taxation the amount due and at that time shall give notice of intention to file suit for the recovery of such tax. Upon receipt of this notice, the amount remitted shall be placed in an escrow account and held by the secretary or his duly authorized representative for a period of thirty days. If suit is filed for recovery of the tax within the thirty-day period, the funds in the escrow account shall be further held pending the outcome of the suit. If the taxpayer prevails, the secretary shall refund the amount to the claimant, with interest at the rate of one and one-quarter percent per month from the date the funds were received by the Department of Revenue and Taxation to the date of such refund.

The refund procedure established by this section is virtually identical to the procedure set forth in LSA–R.S. 47:2110 which was at issue in *United Gas.*

tion section 1341 at all. *Mississippi River Fuel* did cite section 1341 in a footnote, but that citation was merely part of a long discussion interpreting whether as a matter of state law, Louisiana had consented to suit in a federal forum. 382 F.2d at 934, n. 9. The court cited the statute to make the point that Louisiana's authorization for refund suits was designed to avoid the threat of federal injunctive interference that might otherwise be posed by the statute. The holding in *Mississippi River Fuel* was that changes made in the Louisiana State Constitution did not repeal the Louisiana statute providing for the maintenance of refund suits in federal courts. That holding, which went to the consent of the state to suit, was an entirely different matter from the issue of congressional restriction on jurisdiction. *E.g., City of Houston [v. Standard-Triumph Motor Company], supra,* 347 F.2d [194] at 197–99 [ (5th Cir.1965) ]. It is true that *Mississippi River Fuel* and *Shell Oil* did allow, *sub silentio*, what *Bland* later forbad. Since, however, those cases did not discuss the jurisdictional bar of section 1341, the precedential effect of the fact that jurisdiction was exercised must give way to the thoroughly reasoned holding on section 1341 in *Bland*.

595 F.2d at 325 & 327–28 (footnotes omitted). As this Court specifically stated in *United Gas*, "*Mississippi River Fuel* and *Shell Oil* should not be read to decide the jurisdictional issue *sub silentio*." *Id.* at 324 n. 1. We agree with the district court that since *United Gas* and *Bland* are the most recent statements of the Fifth Circuit on section 1341 and since both cases specifically apply the section, they must control the instant case.

█ Plaintiffs alternatively contend that they, as mineral lessees of the United States who are protecting its exclusive jur-

isdiction, are "federal instrumentalities" which are judicially excepted from 28 U.S.C. § 1341. In *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966), the Supreme Court held section 1341 to be inapplicable to suits brought by the United States "to protect itself and its instrumentalities from unconstitutional state exactions." Whatever federal-instrumentality exception may exist, plaintiffs themselves concede they do not meet one criterion of the exception: federal legislation providing jurisdiction over the claim. Nonetheless, they urge this Court to apply this doctrine based upon the existence of the other two criteria—the United States could have brought this suit and the United States has a real and significant interest in the parties asserting the action.[7] Plaintiffs rely largely upon *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), as authority for placing themselves within the federal-instrumentality doctrine. We do not agree. This Court has previously summarized the holding in *Moe:* "*Moe* held that an action by an Indian tribe suing as a Tribe to resist state taxes was not barred from the federal forum under section 1341, because of a special jurisdictional statute for Indian Tribes, 28 U.S.C. § 1362." *United Gas,* 595 F.2d at 328 n. 7. The *Moe* holding was clearly based on the existence of section 1362.[8] As plaintiffs admit, no special jurisdictional statute exists for oil production companies which are mineral lessees. This Court will not carve out an exception for plaintiffs to the jurisdictional bar of section 1341 based on the Supreme Court's decision in *Moe.*

This Court concludes that section 1341 bars plaintiffs from proceeding in the federal forum. Our holding today does not deny plaintiffs ultimate federal review in the United States Supreme Court to pre-

---

**7.** We express no opinion on the presence of either of these factors.

**8.** Plaintiffs also cite *National Carriers' Conference Comm. v. Heffernan,* 440 F.Supp. 1280 (D.Conn.1977), as authority for placing them-

selves within a federal-instrumentality exception. As the district court noted, however, *Heffernan* involved an express grant of jurisdiction to the federal courts—the Employee Retirement Income Security Act of 1974.

serve any substantial federal rights they may have.

AFFIRMED.