JaPITCHER, Judge.
Plaintiffs[1] filed this action to recover severance taxes paid under protest for a period beginning in October of 1982. Plaintiffs argued that the Louisiana Severance Tax Statutes were unconstitutional as applied to oil and gas production from the Barksdale Air Force Base, a federal enclave. In response, defendant, the Louisiana Department of Revenue and Taxation, filed a reconventional demand for severance taxes covering the period from December of 1979 through September of 1982[2]. The trial court dismissed plaintiffs’ claims, holding that the Louisiana Severance Tax Statutes were valid and enforceable. The trial court also granted judgment in favor of defendant on its reconventional demand. We affirm.

FACTS

The facts of these two consolidated cases were adduced by written stipulation and excellently summarized in the trial court’s written reasons for judgment. We will adopt those reasons as our own. They are as follows:
The State of Louisiana, the City of Shreveport and the Bossier Levee District conveyed 22,000 acres located in Bossier Parish to the United States in 1930 for the construction of Barksdale Air Force Base. The Bureau of Land Management leased the mineral rights in the portion of the base known as the “Parcel 3 Lands” to Union Producing Company in 1961. Ark-la, Inc., Arkla Exploration Company, Pennzoil Producing Company, Total Mina-tome Corporation and Murphy Oil USA, Inc. are the successors of Union Producing Company’s rights. The Bureau leased rights in the property known as the “Miss
Murphy USA Lease” to W.R. Stephens and Natural Gas and Oil Corporation. Arkla Exploration Co. and Murphy Oil USA, Inc., are the successors of the leasehold rights of W.R. Stephens and Natural Gas and Oil Corporation. These seven lessees are the plaintiffs in Suit Number 262,928.
UThe Bureau of Land Management leased the mineral rights in the property known as the “Parcel 1” and “Parcel 4” land to Shell Oil Company in 1961. Rosewood Resources, Inc., is the successor in interest of the leasehold rights of Shell Oil Company and is the plaintiff in Suit Number 323,597.
The State of Louisiana notified the Suit Number 262,928 plaintiffs that $38,535.37 was owed in accordance with L.S.A.-R.S. 47:631 as a tax on the severed oil and gas for the period beginning October 1982. That amount was paid under protest pursuant to L.S.A.-R.S. 47:1576 and Suit Number 262,928 was filed for the recovery of that amount and all amounts paid since, which is in excess of $1,858,000.00.
The State notified Rosewood Resources that oil and gas severance taxes in the amount of $123,772.65 for the period March, 1986 through June, 1987, were being assessed from Rosewood in connection with the Barksdale leases in accordance with L.S.A.-R.S. 47:631. Rosewood paid the assessment under protest on October 15, 1987. Suit Number 323,597 was then filed by Rosewood to recover those amounts plus the assessments paid from July, 1987 through the present, an amount in excess of $314,000.
Two federal court proceedings were intstigated [sic] a week prior to the filing of the first state court action. The cases were dismissed based upon the Tax Injunction Act, 28 U.S.C. Sec. 1341 which *1111 denies Federal Court jurisdiction in a proceeding of this nature.
Appeals were taken to the Fifth Circuit in both cases and the dismissal was affirmed. The Court held in MRT Exploration v. McNamara, 731 F.2d 260 (Ct.App. 5th Cir.1984), that the Louisiana Department of Revenue and Taxation is taxing only the revenues of the plaintiffs and not the royalty going to the United States and that there is no reason why Louisiana should be any less free from federal interference in the administration or [sic] its own fiscal affairs because these plaintiffs extracted mineral, which came beneath federal lands. The Fifth Circuit then directed the matter to state courts for a determination of the validity of the tax. MRT Exploration, 731 F.2d at 264.
After taking the matter under advisement, the trial court determined that the Louisiana Severance Tax was an “income tax” within the meaning of the Buck Act. The trial court further determined that the 1976 amendment to the 1947 Mineral Leasing Act for Acquired Lands governed the leases at issue.
In supplemental written reasons for judgment, the trial court determined that plaintiffs in Suit Number 262,928 were liable for severance taxes for the period of December, 1979 through September, 1992. From this decision, plaintiffs have appealed, raising two sets of issues.

ISSUES

MAIN DEMAND
The first set of issues addresses the trial court’s reasons | gfor judgment entered on the main demand on January 18,1990, and are as follows: (1) whether the State of Louisiana may impose a severance tax upon the minerals severed from within the confines of Barksdale Air Force Base without infringing upon the limitations established by Article I, Section 8, Clause 17 of the Constitution of the United States; (2) whether the Louisiana Severance Tax, as in effect for the years at issue in these proceedings, is an “income tax” within the meaning of the Buck Act; and (3) whether the 1976 Amendment to the Mineral Leasing Act for Acquired Lands of 1947 is applicable to the leases in the instant case.
I.
Plaintiffs argue that the Louisiana Severance Tax[3] infringes upon Article I, Section 8, Clause 17 of the Constitution of the United States. Plaintiffs contend that the cases of Humble Pipe Line Company v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964), and Mississippi River Fuel Corporation v. Gocreham, 382 F.2d 929 (5th Cir. 1967), cert, denied, 390 U.S. 1014, 88 S.Ct. 1264, 20 L.Ed.2d 164 (1968) and 390 U.S. 1015, 88 S.Ct. 1264, 20 L.Ed.2d 164 (1968), effectively settled this issue; therefore, the trial court erred in failing to follow the dictates of these cases.
Article I, Section 8, Clause 17 of the United States Constitution permits the United States to obtain exclusive jurisdiction over lands within a State. It provides as follows:
The Congress shall have Power ...
To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, doek-Yards, and other needful Buildings....
In Waggonner, the United States Supreme Court rejected Louisiana’s attempt to impose an ad valorem tax on the property located on Barksdale Air Force Base, a federal enclave. The Court concluded that Congress had exclusive legislative power within the | ¡¡confines of a federal enclave. However, the Supreme Court noted that “[w]hen Congress has wished to allow a State to exercise jurisdiction to levy certain taxes within a federal enclave it has specifically so stated, as in the Buck Act, 4 U.S.C. §§ 104-110.” Waggonner, 376 U.S. at 374, 84 S.Ct. at 860-861.
*1112 In Cocreham, the U.S. Fifth Circuit Court of Appeals held that Louisiana could not exact severance taxes on oil and gas produced by the lessee, a private corporation, under mineral lease from the United States on land that was part of Barksdale Air Force Base. In Cocreham, 382 F.2d at 938, the court stated that, “[j]ust as the state cannot tax personal property located on Barksdale Field, it cannot impose a severance tax when the incidence of taxation, the severance of minerals from the soil, takes place on a federal enclave, outside the jurisdiction of the State of Louisiana.” The Cocreham court, like the Waggonner court, recognized that Congress could allow a State to exercise jurisdiction to levy taxes within a federal enclave, as in the Buck Act. Cocreham, 382 F.2d at 937.
Thus, the exclusive jurisdiction of Congress, as set forth in Article I, Section 8, Clause 17 of the Constitution of the United States, may be modified by an Act of Congress. The Buck Act is such a modification.
The Buck Act was enacted by Congress in 1940 to enable the states to impose certain taxes including “income taxes” within federal enclaves. Section 106 of this Act reads as follows:
§ 106. Same; income tax
(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was. not a Federal area.
(b) The provisions of subsection (a) shall be applicable only with respect to income or receipts received after December 31, 1940.
§ 110(c) of the Buck Act defines “income tax” as “any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts.”
UThus, the right is specifically granted to the State of Louisiana, as a taxing authority, to levy and collect a tax measured by the income from any party “receiving income from transactions occurring or services performed in such area ... to the same extent and with the same effect as though such area was not a Federal area.” See Howard v. Commissioners of the Sinking Fund of the City of Louisville, 344 U.S. 624, 627-629, 73 S.Ct. 465, 467-468, 97 L.Ed. 617, 621-622 (1953).
Therefore, we conclude that the State can impose a severance tax on the minerals severed from within the confines of Barks-dale Air Force Base if the Louisiana Severance Tax is an “income tax,” as defined in § 110(c) of the Buck Act.
II.
Plaintiffs argue that the Cocreham case resolved the issue of whether the Louisiana Severance Tax was an income tax under the Buck Act.[4] The Cocreham court stated as follows:
The portion of the Buck Act on which the Collector relies provides that a state may levy an income tax in a federal enclave within the state to the same extent as if the area were not a federal enclave. 4 U.S.C.A. § 106. The Act defines ‘income tax’ as ‘any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts.’ 4 U.S.C.A. § 110(c). The Louisiana severance tax is ‘levied upon all natural resources severed from the soil ... including ... minerals such as oil [and] gas ...,’ LSA-R.S. 47:631, and is measured by the quantity of minerals severed, LSA-R.S. 47:633. Congress has authorized the states to impose an income tax on private persons in federal enclaves, but the Louisiana severance tax is simply not an income tax. We are not free to expand *1113 the technical and precise language that Congress has used.
Cocreham, 382 F.2d at 939-940.
The trial court determined that the amendment to paragraphs 7 and 8 of LSA-R.S. 47:633 by Acts 1973, Ex.Sess., No. 6, changed the severance tax on oil, distillates or other natural resources from a tax based on the quantity of the resource to a tax based on the value. The court concluded that with this amendment, the severance tax became an “income tax” within the meaning of the Buck IgAct, and did not infringe upon the exclusive rights of Congress to legislate for the federal enclave.
As noted by the court in Humble Oil and Refining Company v. Calvert, 478 S.W.2d 926 (Tex.1972), cert. denied, 409 U.S. 967, 93 S.Ct. 293, 34 L.Ed.2d 234, the broad definition of “income tax” contained in the Buck Act was intended by Congress:
The Congressional intent is strongly stated in the bill’s Senate Report where it is stated that ‘[tjhis definition [of income tax] ... must of necessity cover a broad field because of the great variations to be found between the different State laws. The intent of your committee in laying down such a broad definition was to include therein any State tax (whether known as a corporate-franchise tax, or business-privilege tax, or any other name) if it is levied on, with respect to, or measured by net income, gross income, or gross receipts.
Therefore, we agree with the trial court’s determination that the amendment to the Louisiana Severance Tax rendered it an “income tax” within the meaning of the Buck Act. See Humble Oil and Refining Company v. Calvert, 464 S.W.2d 170, 175-176 (Tex. Civ.App.1971).
Plaintiffs argue that if this court determines the Louisiana Severance Tax is an “income tax” under the Buck Act, the opinion of the trial court must be modified because it recognized that the severance tax on natural gas remained a volume-based tax.
The Louisiana legislature modified the provisions of paragraphs 7 and 8 of LSA-R.S. 47:633 to provide that the imposition of the Louisiana Severance Tax on oil and condensate would thereafter be based on a percentage of the value of the minerals severed at the time and place of the severance. However, no amendment was made to the provisions of paragraph 9 of LSA-R.S. 47:633, which sets forth the method of determining the amount of severance tax due on the severance of natural gas and its equivalents. Therefore, the severance tax on natural gas and its equivalents remains a volume-based tax.
However, because we find that the Louisiana Severance Tax may be imposed as a result of the 1976 amendment to the Mineral Leasing Act for Acquired Lands, this contention is without merit.
III.
Plaintiffs argue that the leases in question never came within the purview of the Mineral Leasing Act of 1920, or the Mineral |9Leasing Act for Acquired Lands of 1947, and therefore were not subject to the 1976 amendment to the Mineral Leasing Act for Acquired Lands.
The leases in the present case were granted under the express supervisory authority of the Secretary of the Interior, subject to various Public Land Orders[5]. These leases, entitled “Protective Lease of Oil and Gas Lands,” were executed by the Director of the Bureau of Land Management. The Public Land Orders were issued as a result of an opinion of the United States Attorney General dated April 2, 1941. The Attorney General was of the opinion that “there was implied authority in the Executive branch to take protective measures in eases where lands acquired by the United States for a specific public purpose are found to contain oil which is being drained by adjoining owners — such lands not being subject to the Mineral Leasing Act of February 25, 1920.” 40 Op. Att’y Gen. 41 (1941).
The Mineral Leasing Act of 1920, now codified in 30 U.S.C. §§ 181-263, was designed to set the framework by which minerals underlying certain lands belonging to the United States could be mined. The Act itself *1114 indicated that its purpose was to promote the mining of coal, phosphate, oil, oil shale, gas and sodium on the public domain. The Act also set forth the method by which deposits of certain minerals could be disposed of, and granted to the Secretary of the Interior the power to dispose of such minerals. The Act specifically did not apply to Appalachian Forest Act lands, lands in national parks and monuments, and lands withdrawn or reserved for military purposes.
This Act was amended in 1946 to provide that the mineral deposits owned by the United States and subject to the Act excluded (1) Appalachian forest lands, (2) lands in incorporated cities, towns or villages, (3) lands in national parks and monuments, (4) lands acquired under other Acts after February 25, 1920, and (5) lands within naval petroleum and oil shale reserves except as specifically provided for in the Act. The 1946 amendment to this | ípAct deleted the specific reference to lands withdrawn or reserved for military purposes.
The Mineral Leasing Act for Acquired Lands, now codified in 30 U.S.C. §§ 351-359, was first enacted in 1947. The purpose of this Act was to promote and encourage the development of ore, gas and other minerals on the acquired lands of the United States on a uniform basis under the jurisdiction of the Department of Interior. The Act was also intended to provide for the leasing of federal lands not theretofore subject to leasing under the Mineral Leasing Act of 1920. Section 8 of this Act, now 30 U.S.C. § 357, provides as follows:
Nothing contained in this Act shall be construed to affect the rights of the State or other local authorities to exercise any right which they may have with respect to properties covered by leases issued under this Act, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessee of the United States.
As enacted, Section 3 of the 1947 Act, now 30 U.S.C. § 352, provided that this Act applied to:
... all deposits of coal ... [and] oil ... which are owned or may hereafter be acquired by the United States and which are within lands acquired by the United States exclusive of such deposits in such acquired lands as are (a) situated within incorporated cities, towns and villages, national parks or monuments, (b) set apart for military or naval purposes, or (c) tidelands or submerged lands may be leased by the Secretary under the same conditions as contained in the leasing provisions of the mineral leasing laws subject to the provisions hereof.
In 1976, Section 3 of this Act, now 30 U.S.C. § 352, was amended. The amendment deleted the exclusion from the provisions of the Act of properties set apart for military or naval purposes.
The trial court concluded that the 1976 amendment to the Mineral Leasing Act for Acquired Lands should govern in the case of these corporate leases. The court noted that the power of the states to impose severance taxes on minerals extracted by lessees of the United States was strengthened by this amendment. The trial court concluded that all of the disputed taxes were assessed after the 1976 amendment to the Mineral Leasing Act for Acquired Lands, and the amendment applies to all Louisiana leases regardless of when the leases were executed.
After our review of the foregoing statutes, we find that the | ntrial court was correct in its determination that the 1976 amendment to the Mineral Leasing Act for Acquired Lands is applicable to the leases in the instant case.

ISSUES

RECONVENTIONAL DEMAND Plaintiffs’ second set of issues addresses the trial court’s supplemental reasons for judgment on defendant’s reconventional demand. The trial court stated as follows:
Stipulation number 32, submitted by defendant and the Suit Number 262,928 plaintiffs, provides that if the taxes are found by this Court to be owing for the period in dispute in the main demand, that the taxes owed for the period December, 1979 through September, 1982, the period addressed in the reconventional demand, *1115 are in the amount of $1,866,146.59 plus legal interest from judicial demand (12-29-82) until paid.
Plaintiffs contend that the trial court’s award for the pre-October, 1982 period is erroneous because (1) it grossly misconstrues the precise words of Stipulation Number 32; (2) it fails to recognize and address the fact that the amendments to LSA-R.S. 52:1 in 1982 became effective as of September 10, 1982; (3) it did not address the fact that the change of position announced by the Department under its letter dated September 30,1982 indicates that the taxes will only be collected with respect to production subsequent to September, 1982; and (5) it failed to apply the doctrine of Contemporaneous Construction for all periods prior to the time that the Department announced its change of position as to the imposition of severance taxes on production from within the confines of a federal enclave.
Stipulation Number 32 provided as follows:
Suit No. 262,928 Plaintiffs acknowledge that the value of the oil severed from the wells located on the Miss Murphy Lands and the Parcel 3 Lands during the months December 1979 through September 1982 was such that the Louisiana severance tax attributable thereto would have been $996,119.53 if such production is held to be subject to taxation, that the quantity of gas severed from the wells located on the Miss Murphy Lands and the Parcel 3 Lands during the months December 1979 through September 1982 was such that the Louisiana severance attributable thereto would have been $742,870.34 if such production is held to be subject to taxation, and that the value of the condensate severed from the wells located on the Miss Murphy Lands and the Parcel 3 Lands during the months December 1979 through September 1982 was such that the Louisiana severance tax attributable thereto would have been $127,156.72 if such production is l^held to be subject to taxation, all as is more particularly set forth on Exhibit “Q” attached hereto and made a part hereof. (Emphasis ours).
These consolidated cases were submitted to the trial court for decision upon the Joint Stipulation of Facts and briefs of the parties. Stipulation No. 32 clearly provides that taxes for this period are due “if such production is held to be subject to taxation,” and the trial court so found. However, plaintiffs’ arguments do not address whether the production for this period was subject to taxation. Rather, plaintiffs’ arguments focus on whether defendant is in some way precluded from collecting these taxes because of their actions during the period in question. As such, we find that plaintiffs are bound by the wording of the stipulation. Therefore, plaintiffs’ contentions are without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Plaintiffs, Arkla, Inc., Pennzoil Producing Company, Arkla Exploration Company, Murphy Oil USA, Inc., and Total Minatome Corporation, are to equally pay their share of one-half of the costs of this appeal. Rosewood Resources, Inc. is to pay the remaining one-half of the costs of this appeal.
AFFIRMED.

. Suit Number 262,928 and Suit Number 323,-597 were consolidated by the trial court. We will refer to the appellants from both suits collectively as "plaintiffs.” Plaintiffs in Suit Number 262,928 (our docket number 94 CA 0063) are Arkla, Inc., Pennzoil Producing Company, Arkla Exploration Company, as successor to the interests of MRT Exploration Company and Mississippi River Transmission Corporation, Murphy Oil USA, Inc., and Total Minatome Corporation, as successor to the interests of Texas Gas Exploration Corporation by corporate merger. The plaintiff in Suit Number 323,597 (our docket number 94 CA 0064) is Rosewood Resources, Inc.

. The reconventional demand was filed in Suit Number 262,928 only.

. LSA-R.S. 37:631-646.

. Plaintiffs also argue that the Louisiana Constitution, Article VII, § 4, differentiates between the income tax and the severance tax. However, we believe that this difference is of no consequence. The key is whether the tax is an income tax under federal law.

. Public Land Order No. 701 and 2178.