[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 211.]

VISICON, INC., D.B.A HOPE HOTEL, APPELLANT, *v.* TRACY, TAX
COMMISSIONER, ET AL., APPELLEES.

[Cite as *Visicon, Inc. v. Tracy*, 1998-Ohio-115.]

*Taxation—Real property tax—Two-hundred-fifty-room hotel located in Wright-
    Patterson Air Force Base on land leased from United States Air Force not
    taxable.*

(No. 97-2175—Submitted May 20, 1998—Decided September 23, 1998.)

APPEAL from the Board of Tax Appeals, Nos. 96-M-414 and 96-M-415.

———————————

{¶ 1} This appeal concerns the two-hundred-fifty-room Hope Hotel and
Conference Center ("Hotel") located on the Wright-Patterson Air Force Base
("Wright-Patterson") in Greene County. The land on which the Hotel is located
was leased from the United States Air Force by H.A.I., Inc. and Vantage Group,
Inc., for a term of forty years for the sum of one-dollar ("Lease"). Later, the lessees'
interest was assigned to Visicon, Inc. ("Visicon"), appellant, an Ohio for-profit
corporation.

{¶ 2} The terms of the Lease provide that the property is being leased by
the Secretary of the Air Force, by virtue of the authority contained in Section 2667,
Title 10, U.S. Code. The Lease states that the sole purpose for which the leased
land and the improvements that are to be erected thereon shall be used is "for the
design, construction, operation and maintenance of a 250-room Visitors Quarters
and Conference Center, primarily for use by the military and civilian personnel
traveling in support of the Air Force mission."

{¶ 3} The Lease also provides that the lessee is to construct and operate the
Hotel on the leased premises at its sole cost and expense. The Lease then states, "It
is specifically understood that the construction of the improvements herein is a

private undertaking, title to such improvements shall be in the Lessee and the Government's sole and exclusive interest in this Lease is limited to that of lessor of the land."

{¶ 4} The Lease requires that upon its expiration or early termination, "the Lessee shall forthwith terminate its operations on and vacate the leased premises. * * * [T]he Lessee shall remove all of the improvements and its other property from the leased premises and restore the premises to the reasonable satisfaction of the Government * * *. The Government may, at its option and subject to Congressional authorization, if required, accept the Lessee's property in lieu of restoration." The Lease also provides that it may be renewed.

{¶ 5} A letter introduced by Visicon from the Assistant to the Commander of Wright-Patterson Air Force Base states that the Hotel is located on exclusive-jurisdiction land. The Lease also states in paragraph 9d that the United States presently exercises exclusive federal jurisdiction over the leased premises.

{¶ 6} After the Hotel was built, Visicon obtained a mortgage from Bank One Dayton, N.A. In the mortgage Visicon, as mortgagor, warrants that "Mortgagor is the owner of the Improvements." The term "Improvements" is defined in the mortgage as "All buildings, structures and improvements * * *."

{¶ 7} The tax bill for the tax year in question, 1994, was sent to the United States of America as owner. The tax bill sets forth a valuation for a building, but there is no value set forth for the land.

{¶ 8} A complaint against exemption was filed by the Greene County Prosecuting Attorney, alleging that Visicon had applied for and been granted an exemption from taxation pursuant to R.C. 5709.08. The prosecutor alleged that Visicon was not in compliance with R.C. 5709.08. Shortly thereafter Visicon filed an application for exemption.

{¶ 9} On March 26, 1996, the Tax Commissioner issued journal entries deciding both the prosecutor's complaint against exemption and Visicon's

application for exemption. Regarding the prosecutor's complaint, the Tax Commissioner held in favor of the prosecutor, basing his decision on the Board of Tax Appeals' decision in a prior case, *Visicon, Inc. v. Tracy* (Aug. 11, 1995), BTA No. 94-K-730, unreported. In the prior *Visicon, Inc. v. Tracy* case, the BTA upheld a use-tax assessment against Visicon after having determined that it was Visicon, and not the Air Force, that was the owner of the Hotel. Finally, the Tax Commissioner denied Visicon's application for exemption, citing his decision of the same date granting the prosecutor's complaint against exemption.

{¶ 10} Both cases were appealed to the BTA by Visicon. In addition to the record in this case before the BTA, the parties agreed that the record in the prior *Visicon v. Tracy* use-tax case before the BTA would be incorporated as part of the record in the present case.

{¶ 11} In the present cases, the BTA affirmed the Tax Commissioner's denial of Visicon's claim for exemption and grant of the prosecutor's complaint against exemption.

{¶ 12} This cause is now before the court upon an appeal as of right.

───────────────

*Keating, Muething & Klekamp*, *J. Neal Gardner* and *Paul D. Dorger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Barton A. Hubbard*, Assistant Attorney General, for appellee, Roger W. Tracy, Tax Commissioner.

*William S. Schenk, Jr*., Greene County Prosecuting Attorney, *Michael E. Foley*, Assistant Prosecuting Attorney, and *Steven K. Haller*, Civil Division Director, for appellee Greene County Auditor.

───────────────

*Per Curiam*.

{¶ 13} Visicon raises several contentions as to why the Hotel is not subject to the real property tax sought to be imposed by the county. However, because we

find one contention to be dispositive, we will not discuss the other contentions raised by Visicon. The dispositive contention raised by Visicon is that the state of Ohio has no jurisdiction to assess a real property tax on the Hotel because such tax is not authorized by the United States Constitution, federal case law, or Section 2667(e), Title 10, U.S.Code. We agree.

{¶ 14} Visicon claims that the tax in this case is not permitted under the United States Constitution. Clause 17, Section 8, Article I, United States Constitution, permits the United States to obtain exclusive jurisdiction over lands within a state. Specifically it provides:

"The Congress shall have Power * * * [t]o exercise exclusive Legislation in all Cases whatsoever * * * over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

{¶ 15} The essence of Clause 17, Section 8, Article I is that when land owned by the United States becomes subject to its exclusive jurisdiction, the state retains only such jurisdiction as it reserves when the land is ceded to the United States.

{¶ 16} The record in this case includes a letter to Visicon from the Assistant to the base Commander of Wright-Patterson Air Force Base, stating that the Hotel is located on exclusive-jurisdiction land, within the confines of Wright-Patterson. In addition, the Lease in paragraph 9d represents that the "United States presently exercises exclusive Federal jurisdiction over the leased premises." The Attorney General apparently does not dispute Wright-Patterson's exclusive-jurisdiction status. The appendix attached to the Attorney General's brief submitted to the BTA contains a letter to an Assistant Attorney General from an Assistant Staff Judge Advocate at Wright-Patterson concerning the exclusive jurisdiction over the base. Attached to the letter is a copy of a 1980 letter from the Air Force to the Governor of Ohio, stating that it updates a 1948 letter from the Air Force giving notice to the

4

Governor that the United States has accepted exclusive jurisdiction over Wright-Patterson. The 1980 letter sets forth an acknowledgment of receipt and acceptance of the exclusive jurisdiction by the Governor. Thus, it is not disputed that the land occupied by the Hotel is subject to the exclusive jurisdiction of the United States.

{¶ 17} The terms of Clause 17, Section 8, Article I are recognized and implemented by the state of Ohio in R.C. Chapter 159. R.C. 159.03 provides:

"The consent of the state is given, in accordance with clause 17, Section 8, Article I, United States Constitution, to the acquisition, between May 6, 1902, and the effective date of this amendment [March 14, 1980], by the United States, by purchase, condemnation, or otherwise, of any land in this state required for sites for custom houses, courthouses, post offices, arsenals, or other public buildings whatever, or for any other purposes of the government."

{¶ 18} R.C. 159.04 then provides:

"(A) *Exclusive jurisdiction* in and over any land acquired by the United States under section 159.03 of the Revised Code is hereby ceded to the United States, *for all purposes* except the service upon such sites of all civil and criminal process of the courts of this state." (Emphasis added.)

{¶ 19} Finally, R.C. 159.05 provides:

"As long as the lands whose acquisition is consented to by section 159.03 of the Revised Code remain the property of the United States they are *exempt and exonerated from all state, county, and municipal taxation, assessment*, or other charges which may be levied or imposed under the authority of this state." (Emphasis added.)

{¶ 20} In *S.R.A., Inc. v. Minnesota* (1946), 327 U.S. 558, 562-563, 66 S.Ct. 749, 753, 90 L.Ed.851, 856, the Supreme Court stated, regarding lands over which the United States has exclusive jurisdiction, "[N]ot only is the federal property immune from taxation because of the supremacy of the Federal Government but state laws, not adopted directly or impliedly by the United States, *are ineffective to*

*tax or regulate other property* or persons upon that enclave." (Emphasis added.) Likewise in *Evans v. Cornman* (1970), 398 U.S. 419, 426, 90 S.Ct. 1752, 1757, 26 L.Ed.2d 370, 376, fn. 4, the Supreme Court stated that "[e]xcept for a lessee's interest in property leased from the United States, see 10 U.S.C. § 2667(e), Congress has not provided that States may apply their property taxes to federal enclaves."

{¶ 21} Thus, unless Congress specifically waives the immunity from taxation, property located on exclusive jurisdiction land is not taxable. For instance in *Surplus Trading Co. v. Cook* (1930), 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091, Arkansas levied a personal property tax against a quantity of blankets that had been purchased from the United States by a New York company a few days prior to the tax listing date. On the tax listing date most of the blankets were still located at the Army's Camp Pike. After reviewing the status of Camp Pike, as exclusive-jurisdiction land, the Supreme Court held that consistent with the United States Constitution, Arkansas' tax laws could not be applied to personal property located within Camp Pike.

{¶ 22} In a more recent case, *Humble Pipe Line Co. v. Waggonner* (1964), 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782, Louisiana sought to levy an ad valorem tax upon property owned by Humble and located upon Barksdale Air Force Base. The Louisiana taxing authorities contended that by granting an oil and gas lease to lay a pipeline, the government had lost its power to exclusive jurisdiction over those parts of the base. The Supreme Court disagreed, stating that it had previously held that exclusive federal jurisdiction was not lost by lease of property for commercial purposes within an enclave. The Supreme Court pointed out that "[w]hen Congress has wished to allow a State to exercise jurisdiction to levy certain taxes within a federal enclave it has specifically so stated, as in the Buck Act, 4 U.S.C. §§ 104—110." *Id.* at 374, 84 S.Ct. at 860-861, 11 L.Ed.2d at 787. The Buck Act permits

states to impose sales, use, and income taxes within an area of exclusive jurisdiction.

**{¶ 23}** Moreover, Section 2667(e), Title 10, U.S.Code does not allow taxation of this property. In this statute, Congress has granted to state and local governments the right to tax a lessee's interest in property leased from the United States. Section 2667(e), Title 10, U.S.Code provides:

"*The interest of a lessee of property leased under this section may be taxed by State or local governments*. A lease under this section shall provide that, if and to the extent that the leased property is later made taxable by State or local governments under an Act of Congress, the lease shall be renegotiated." (Emphasis added.)

**{¶ 24}** Under Section 2667(e), Title 10, U.S.Code, a state is permitted to tax the "interest of a lessee of property leased under this section." Thus, Congress has granted permission to tax the lessee's leasehold interest. The only property leased from the Air Force in this case was the land. For the purpose of discussion we will treat Visicon's leasehold interest as real property for consideration of the real property tax at issue.

**{¶ 25}** In *Franklin Cty. v. Lockbourne Manor, Inc.* (1958), 168 Ohio St. 286, 6 O.O.2d 489, 154 N.E.2d 147, the United States leased land on the Lockbourne Air Force Base to a lessee who was to build housing to be rented to military and government contractors' personnel. The contract provided that as the housing was completed it became part of the land and part of the property leased from the Air Force. The lessee's leasehold interest in *Lockbourne* included both the land and the buildings. The county sought to impose a real property tax upon both the land and buildings. The lessee filed an application for exemption. The issue that we considered in *Lockbourne* was whether the lessee's leasehold interest could be subjected to the county real property tax. We stated that "in states which tax leaseholds the government has consented to such a tax." *Id.* at 287, 6 O.O.2d

at 489, 154 N.E.2d at 148. However, we held that the lessee's interest was not subject to the Ohio real property tax because "[t]he present law of Ohio does not provide for a tax on leaseholds." *Id.* at 287, 6 O.O.2d at 490, 154 N.E.2d at 148. With one exception, R.C. 5705.61, which is not relevant here, Ohio law still does not impose a real property tax upon leaseholds. Thus no real property tax can be assessed against Visicon's leasehold interest, whether or not it includes the Hotel as part of the leasehold.

{¶ 26} We are aware that the Supreme Court has upheld the imposition of state and county personal property taxes upon a lessee in *Offutt Hous. Co. v. Cty. of Sarpy* (1956), 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151. The lease in *Offutt* was between the Air Force and a lessee who was to construct housing on the land. The lease provided that as the housing was completed it became real estate and part of the leased land. The lease further provided that at the expiration or termination of the lease all improvements remained the property of the government. Therefore in *Offutt*, the leasehold included both the land and the buildings. The Nebraska tax at issue was a personal property tax imposed on the buildings, improvements, appliances, and furniture. The Supreme Court reviewed the predecessor to the current Section 2667(e), Title 10, U.S.Code, which stated, "The lessee's interest, made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation." 61 Stat., Part I, 774, 775, Section 6. The Supreme Court acknowledged that the legislation did not refer specifically to property in an area of "exclusive Legislation." However, the Supreme Court held that the legislation permitted the taxation of private interests in these types of housing projects. The primary differences between *Offutt* and the present case are that in *Offutt* both the land and the buildings were part of the leased property and that Nebraska imposed a tax which apparently reached the leasehold property.

{¶ 27} For all the foregoing reasons we find the decision of the Board of Tax Appeals to be unreasonable and unlawful, and we therefore reverse it.

*Decision reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____