**Vernon BARLOW, et al., Plaintiffs,**

**v.**

**David A. MEYERS, et al., Defendants.**

**No. C–3–02–16.**

United States District Court,
S.D. Ohio,
Western Division.

Oct. 2, 2002.

James M. Hill, O'Diam, McNamee, & Hill Co., Dayton, OH, for plaintiff.

Robert Edwin Lachey, Dennis Alan Lieberman, Flanagan, Lieberman, Hoffman &

Swaim, Roger John Makley, Coolidge, Wall, Womsley & Lombard, Dayton, OH, for defendant.

Bradley Clair Smith, Flanagan, Lieberman, Hoffman & Swaim, Dayton, OH, for movant.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (DOC. # 12); DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DOC. # 6) AND RENEWED MOTION FOR SAME (DOC. # 21); TERMINATION ENTRY

RICE, Chief Judge.

This case presents for the Court's consideration a rich smorgasbord of threshold issues touching on principles of federal jurisdiction and comity, perhaps an exemplar of what Judge Bork had in mind when he referred to the "intellectual feast" of judging.[1] Plaintiffs are Vernon Barlow ("Barlow"), a 16% shareholder in the closely held Visicon, Inc. ("Visicon"), and Visicon itself. Visicon's principal asset is the Hope Hotel and Conference Center ("Hope Hotel"), situated on the grounds of the Wright Patterson Air Force Base, just outside Dayton, Ohio. Defendants are David A. Meyers ("D.Meyers"), an officer of Visicon, Kornerstone Equities Corp. ("Kornerstone"), a corporation allegedly established by D. Meyers to manage the Hope Hotel, and Amanda Witter, an alleged co-owner of Kornerstone.

On the face of their 17–count Complaint (Doc. # 1), Plaintiffs seek a host of equitable and legal remedies for alleged mismanagement and waste on the part of D. Meyers, acting as he allegedly has been in his capacity as the President of Visicon and the managing officer of the Hope Hotel.[2] Yet, this is only half the picture. Adding light to this controversy is the fact that related litigation is currently underway in the Domestic Relations Division of the Common Pleas Court of Greene County, Ohio. In July of 1998, D. Meyers filed for divorce from Kimberly Meyers ("K.Meyers") (Case No. 98–DR–0423). That action is still pending, and this Court has been informed on the record by counsel for the respective parties therein that final disposition is *not* expected anytime in the near future.[3] Importantly, K. Meyers is an 84% shareholder of Visicon. She is also Bar-

**1.** *See* Nomination of Robert H. Bork to be Associate Justice of the Supreme Court of the United States: Hearings Before the Senate Comm'n on the Judiciary, 100th Cong., 1st Sess. 854 (1987).

**2.** Although plead as seventeen individual counts, many of the counts are merely prayers for equitable relief owing to the allegations as plead in other counts. Jurisdiction is premised on two grounds: 1) diversity of citizenship, 28 U.S.C. § 1332; and 2) federal question jurisdiction, 28 U.S.C. § 1331, pursuant to Count Sixteen of the Complaint, which purports to state a claim under the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. §§ 1962 & 1964 ("RICO"). (Count Sixteen also purports to state a claim under Ohio Rev.Code § 2923.32.) The Court has some doubt as to the first basis for jurisdic-

tion, as the residency status of D. Meyers and Witter was not stated in the Complaint. Nevertheless, because other jurisdictional defects exist at this time, the Court will not concern itself with this matter at the present.

**3.** On July 16, 2002, the Court held an on-the-record telephonic hearing, attended by Robert Goelz, Domestic Relations counsel for D. Meyers, and Paul Barrett, counterpart counsel for K. Meyers. Messrs. Goelz and Barrett concurred that further testimony was scheduled in the Domestic Relations action for August 13, 14, and 15, 2002, but that a decision on property distribution would likely not be rendered for some time, due to there being numerous pleadings and the fact that it has recently been reassigned, such that it is expected that the newly assigned judge will

low's daughter. Not surprisingly, her shares are at the heart of the couple's property division dispute in the Domestic Relations Court.

On March 7, 2002, Plaintiffs herein filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 6), through which they sought an order from this Court enjoining Defendants from taking further management actions with respect to Visicon and the Hope Hotel, and requiring D. Meyers to provide them full and complete access to corporate records. In response, contending that Barlow's action in this Court is nothing short of an attempt to side step an order issued by the Domestic Relations Court limiting his (Barlow's) access to the financial affairs of Visicon and the Hope Hotel, and, at the same time, enhancing the rule of D. Meyers by placing him in charge of the day-to-day operations of those entities, Defendants filed a Motion to Dismiss and Alternative Motion to Stay (Doc. # 12), in which they made the alternative arguments that this Court either lacks subject matter jurisdiction, should abstain from hearing the case, or should stay the proceedings. On May 13, 2002, Plaintiffs filed a Renewed Motion for Temporary Restraining Order (Doc. # 21), which was followed, on May 29, 2002, by the Defendants' Renewed Motion to Dismiss (Doc. # 23). More recently, on July 2, 2002, Plaintiffs filed an Emergency Motion for Hearing for Preliminary Injunctive Relief, or in the Alternative, Stipulation to Stay of Proceedings (Doc. # 25). Defendants have agreed to a stay. (*See* Doc. # 26.) At a telephonic

conference held on July 12, 2002, the Court, with the agreement of the parties, scheduled a preliminary injunction hearing for August 12, 2002.

The Court does not reach the merits of the Complaint in this Decision and Entry. Defendants have raised a number of interesting questions touching upon notions of jurisdiction, federalism, comity, and judicial economy, questions which need to be addressed before the Court can proceed to hear the underlying facts. One fact does need to be brought to light, however, as it helps explain the nature of Barlow's grievance and the apparent cause for several of the procedural actions taken in Greene County Common Pleas Court (noted below). That fact is that in March, 1997, Barlow and K. Meyers, who together own 100% of Visicon, transferred their shares, inclusive of all rights and privileges attached thereto, into an irrevocable trust, on which D. Meyers was named as trustee. Barlow's personal grievance thus stems from whatever harm has arisen or may arise from D. Meyers' alleged mismanagement of the 16% of Visicon shares he (Barlow) personally transferred to the trust.[4]

For the reasons which follow, albeit different from those raised by Defendants, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' Complaint, and that it must be dismissed. Accordingly, Defendants' Motion to Dismiss shall be SUSTAINED, and Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, and their Renewed Motion for same, shall be OVERRULED.

---

need some time to familiarize himself with the case.

4. While the effect and present validity of this trust is no doubt a merits issue itself, Plaintiffs herein have not cast doubt upon its execution in the first instance. Moreover, absent the trust's existence, it is not obvious to the Court how Barlow has standing to bring his own

claim against D. Meyers. Generally, any injury suffered by a corporation on account of executive mismanagement is the corporation's own, and Plaintiffs have not pointed to any cases holding that a corporate officer holds a special fiduciary duty to an individual shareholder when the officer is not a shareholder himself and has no voting privileges of his own.

I. *Analysis*

■ Defendants submit that Plaintiffs' action is nothing more than a "backup plan" in the event D. Meyers is awarded ownership of the 84% of disputed Visicon shares currently owned by K. Meyers. (Doc. #12 at 8.) The legal argument appears to be that because this is, at bottom, a domestic relations dispute, it is not for this Court to decide. While it is true that the Supreme Court has held that domestic relations disputes, at least insofar as they concern divorce, alimony, and custody decrees, are not for the federal courts to decide, even where there is diversity of citizenship, *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992),[5] the case at bar does not come within that line of cases. Even putting aside the question of whether property settlements come within the "domestic relations exception" to diversity jurisdiction, as it has come to be known, *see Holloway v. Brush*, 220 F.3d 767, 790 (6th Cir.2000), the case in *this* Court does not concern the ownership of K. Meyers' shares. The two actions are different and the argument is therefore not well taken.

■ A much closer question is whether the *Rooker–Feldman* doctrine divests the Court of its jurisdiction to hear this case. Pursuant to the Supreme Court's holdings in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *see also Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936–37 (6th Cir.2002). The *Rooker–Feldman* doctrine applies where the claim raised in federal court is inextricably intertwined with a claim asserted in a state court proceeding, and where the federal plaintiff's "specific grievance [is] that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case" in state court. *Tropf*, 289 F.3d at 937. In addition, it only applies where the federal plaintiff was actually a party to the state court ruling which is expressly or implicitly being challenged. *See De Grandy*, 512 U.S. at 1005, 114 S.Ct. 2647; *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995).

Defendants did not invoke this issue themselves, but because it poses a serious question which goes to jurisdiction, the Court may, indeed must, do so *sua sponte*. *See In re Millers Cove Energy Co., Inc.*, 128 F.3d 449, 450 (6th Cir.1997).[6]

---

**5.** Defendants do not actually cite federal law on this point. Instead, they cite *State ex rel. Judson v. Spahr*, 33 Ohio St.3d 111, 515 N.E.2d 911 (1987), for the proposition that a Domestic Relations Court has the jurisdiction to determine property disputes pursuant to divorce actions. This is of course true, but taken by itself it does not provide a basis for this Court, sitting in a diversity action, to deny its jurisdiction. At most, it touches upon a factor to be considered in an abstention analysis, *viz.*, the order in which related state and federal actions were filed. Nevertheless, the Court finds it a reasonable inference that Defendants intended to invoke the federal law on this topic.

**6.** There is some confusion as to whether *Rooker–Feldman* is a doctrine of abstention or jurisdiction. For example, in *Tropf*, the Sixth Circuit referred to the doctrine as *"Rooker–Feldman* abstention," but held that it was properly invoked to refuse jurisdiction. While the results may appear the same from an empirical standpoint, abstention is not a denial of jurisdiction. Indeed, as the root of its name suggests, the abstention doctrine applies where a federal court *has* jurisdiction,

From a common sense perspective, as long as diversity actually exists or the RICO claim is properly stated, this Court should have no reason to doubt its jurisdiction over Plaintiffs' case. Plaintiffs' Complaint appears to request relief arising out of the management of Visicon and the Hope Hotel, while the relevant part of the action in the Domestic Relations Court, a court of limited jurisdiction, appears to concern only the issue of ownership of K. Meyers' 84% of Visicon shares. While the decision on who ends up with the ownership of those shares may ultimately control the question of the management of Visicon and the Hope Hotel, that fact by itself would not typically prevent the Court from hearing evidence on the allegations that D. Meyers, as the person presently managing the hotel, has and continues to squander assets and commit waste, in breach of his fiduciary duties to Barlow, as the trustee of Barlow's 16% of shares, and his fiduciary duties to the corporation, as an officer.[7] Furthermore, Domestic Relations counsel for both D. Meyers and K. Meyers affirmed, in an on-the-record proceeding in this Court, that the Domestic Relations Court will determine neither Barlow's rights as the Visicon minority shareholder nor any issues *directly* concerning the operation and management of Visicon and the Hope Hotel. Thus, initial appearances would suggest that the case at bar bears a significantly different character than the case before the Domestic Relations Court, that Barlow and Visicon are not parties to the Domestic Relations dispute, and that, therefore, the *Rooker–Feldman* doctrine is inapplicable.[8]

Unfortunately, common sense perspectives do not always carry the day. Despite the representations from Domestic Relations counsel, which the Court has every reason to believe, and does believe, were made in good faith, there exists from the Domestic Relations Court a presently viable interlocutory order which sweeps much more expansively than one might suspect it should, going directly to the issue of management of the Hope Hotel. This fact is crucial. On February 12, 1999, the Domestic Relations Court appointed D. Meyers to be the officer in charge of the day-to-day operations and management of Visicon and the Hope Hotel, and restrained K. Meyers from taking any measures to interfere with such. It is the Court's understanding that this Order was issued upon consideration of a motion filed therein by D. Meyers for the purpose of enforcing his rights under the 1997 Trust Agreement, through which he was vested with full control of Visicon. The only access to the hotel's management provided K. Meyers by the Domestic Relations Court came in the form of an instruction that D. Meyers

---

but for one reason or another must, or should, abstain from hearing the case, usually due to principles of comity, federalism, or constitutional prudence. *See generally, Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074–75 (6th Cir.1998). *Rooker–Feldman* is properly characterized as a jurisdictional doctrine, because where it applies, a district court cannot take jurisdiction in the first instance. *See Tropf*, 289 F.3d at 937.

7. Another question which the Court need not consider at present is the authority of Barlow to join Visicon as a Plaintiff to this action. Barlow certainly can state a claim on his own for breach of fiduciary duty, given the fact that his shares are controlled by D. Meyers, as their trustee, but the pleadings do not establish that Visicon, which the Court presumes can act only through its directors, was authorized to bring suit. Indeed, it is unclear to the Court who Visicon's directors are, or if it even has any.

8. Mr. Goelz, Domestic Relations counsel for D. Meyers, did suggest that there is a remote possibility that the Domestic Relations Court could order the sale of the Hope Hotel, but even if that were to happen, it does not change the fact that Plaintiffs herein have stated a colorable claim for past and current waste and mismanagement.

provide copies of the hotel's daily ledgers to her counsel.

There is more. On November 14, 2001, Barlow and Visicon both moved to intervene in the Domestic Relations Court for the purpose of being heard with regard to the February 12, 1999, Order, and the Domestic Relations Court granted their motion. That same day, in a separate entry, the Domestic Relations Court modified its earlier Order by granting Barlow and K. Meyers complete access to all of the company's financial records, access to the premises of the Hope Hotel, and the right to hold meetings. Subsequently, in a second modification order, issued on November 26, 2001, and made with expressed consideration for the rights of Barlow and Visicon, interveners therein,[9] the Domestic Relations Court granted Ronald Russell, CPA,[10] and Vivian Barlow,[11] bi-weekly access to the premises of the Hope Hotel and its business records. It was further ordered that the defendants therein, which as stated in that particular order included Barlow and Visicon, were not to remove any monies from the corporation without further order of the court. Significantly, nothing has been brought to the Court's attention indicating that D. Meyers is not still the acting officer in charge of Visicon and the Hope Hotel, as appointed in the Domestic Relations Court's original Order of February 12, 1999.[12]

Therein lies the crux of this Court's quandary. But for the Domestic Relations Court's Order, this Court would exercise jurisdiction, but as long as said Order is in place, this Court cannot provide the equitable relief Plaintiffs seek, which is essen-

---

**9.** In fact, in the Entry, a copy of which is attached as Exhibit M to Defendant's Motion (Doc. # 12), Barlow and Visicon are designated as "Defendants."

**10.** Plaintiffs have utilized Russell's auditing services in preparing for this litigation. (See Russell Aff., attached to Pl.'s Mot. for Temp. Restr. Order (Doc. # 6).)

**11.** The Court has not been informed what relationship Vivian Barlow has to anyone who is a party to this litigation.

**12.** Adding yet another layer of intrigue to this litigation is the existence of a second case pending in the General Division of the Greene County Common Pleas Court between D. Meyers and the Plaintiffs herein (Case No.2001–CV–0538). That case, filed prior to Barlow's and Visicon's intervention in the Domestic Relations dispute, appears to be the product of D. Meyers' concern that the injunction stemming from the Domestic Relations Court's February 12, 1999, Order, though applicable to K. Meyers, did not apply to Barlow. Accordingly, D. Meyers filed suit in the General Division Court to enjoin Barlow from taking any action which might have an effect on the operations of Visicon and the Hope Hotel. On August 13, 2001, after a hearing in front of the Magistrate, a Temporary Restraining Order was issued to that effect. In addition, Barlow and Visicon filed counterclaims in that action, the substance of which has been repeated in several of their claims filed herein.

Putting aside for the moment the jurisdictional issues, owing to the Domestic Relations action, which the Court discusses below, if the action in the General Division Court were presently active, Defendants' alternative argument that the Court should abstain from hearing this case might be of some merit, pursuant to the Supreme Court's holding in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The essential teaching of Colorado River, which the Court need not discuss in detail, is that in certain situations, judicial economy favors abstention where a parallel action between the same parties has substantially progressed in a state court of competent jurisdiction. It would be inappropriate to invoke the doctrine at this point in time because, as represented by all counsel herein, the Temporary Restraining Order issued in the General Division of the Greene County Common Pleas Court has been dissolved and the action stayed by agreement entered into by the parties thereto on October 5, 2001. Under these circumstances, Colorado River teaches that abstention would be inappropriate.

tially the divestiture of D. Meyers' authority to manage Visicon and the Hope Hotel. Doing so would effectively overrule the Order of the Domestic Relations Court and overstep the limits of that court's modifications of that Order. In other words, by seeking the relief they do in this Court, Plaintiffs are implicitly claiming that the Domestic Relations Court's Order was issued in error, and they are asking this Court to overrule it, or at least to overlook it. This is precisely the type of action proscribed by *Rooker–Feldman.*

At a telephonic conference held on July 12, 2002, participated in by counsel for all of the parties, counsel for Plaintiffs acknowledged that the Domestic Relations Court's Order is currently in place and valid, albeit subject to "informal maneuvering" on the part of all concerned.[13] Therefore, although it has been represented by Domestic Relations counsel that the case in the Domestic Relations Court will not resolve issues concerning Visicon's management or the rights of Barlow as the minority shareholder, as things stand now, such issues and rights have been considered and ruled upon by that court, if only for interlocutory purposes. While this Court has not found any Sixth Circuit precedent on point, several circuits have ruled that there is no rational reason for *Rooker–Feldman* not to apply with equal vigor to interlocutory orders, given that a federal district court has no more right to review interlocutory orders of state courts than they do final orders. *See, e.g., Doe & Assoc. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir.2001) (concluding that interpreting *Rooker–Feldman* to apply only where a "final appealable order" is called into question would bypass the fundamental purpose of the doctrine); *Richardson v. D.C. Ct. of App.,* 83 F.3d 1513, 1515 (D.C.Cir.1996) (same). Finding no contra authority on the issue, this Court

sees no reason not to apply the same logic. Furthermore, although the doctrine cannot be invoked where the federal plaintiff was not himself a party to the action in state court, in this Court's opinion, Plaintiffs herein have divested themselves of their right to raise this point. The Domestic Relations Court issued an Order on February 12, 1999, which went beyond issues of property ownership and extended to the present day-to-day operations and management of Visicon and the Hope Hotel. It then granted the motion of Plaintiffs herein to intervene for the purpose of being heard on this issue and subsequently tendered a Modification Order, taking into account the rights of Barlow and the needs of Visicon (Plaintiffs in this litigation). Thus, while Plaintiffs now argue that the Domestic Relations Court has no jurisdiction over the issues related to the claims as plead in their Complaint (*see* Doc. # 17 at 4–5), it is too late in the day for them to argue as much. Under *Rooker–Feldman,* this Court can no more review the scope of the Domestic Relations Court's jurisdiction than it can the merits of its orders. While Plaintiffs are certainly not estopped from raising the jurisdictional issue with the Ohio Court of Appeals, they cannot raise it in this Court at this juncture.

To be sure, many of Plaintiffs' legal claims could be considered by the Court, without it violating the proscription of the *Rooker–Feldman* doctrine. For instance, Count One of the Complaint is for breach of fiduciary duties, and certainly the Court could award legal damages for past breaches without effecting a change in management. There are several problems to this approach, however. First, the Court is not itself in the position to go item by item through the Complaint, redacting that which is covered by the Domestic Relations Court's order. What is more,

---

**13.** The July 12 conference was not on the record.

even if the Court were to grant Plaintiffs leave to amend, to cure their Complaint, and they were to do so adequately, questions would inevitably arise as to whether certain acts taken by D. Meyers, which Plaintiffs might claim were wrongful, were within the powers authorized by the Domestic Relations Court. As a result, even in limiting its review to past acts, the Court would be required to use the Domestic Relations Court's order as its benchmark, at least for any acts taken after February 12, 1999. Such discretion is better left to the Domestic Relations Court, itself, pursuant to its powers to enforce compliance with its orders. Finally, and perhaps of greatest concern, is the fact that even if this Court were to award Plaintiffs money damages for past malfeasance on the part of the Defendants, Plaintiffs' relief would be incomplete. It is control of the Hope Hotel that they seek ultimately, as evidenced by their Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 6), in which they ask the Court to remove D. Meyers from his position as manager. In the end, Plaintiffs' true and ongoing injury, as alleged, could not be redressed by this Court, at least as long as the Domestic Relations Court's Order remained in effect. Such piecemeal relief should be avoided.

In sum, because the essence of what Plaintiffs seek is relief from an Order of the Domestic Relations Court, issued pursuant to an action in which Plaintiffs themselves intervened as defendants, and in which the state court took the rights and needs of Plaintiffs into account in making the Order, this Court finds that under the *Rooker–Feldman* doctrine, it lacks jurisdiction to hear their claims as long as the posture of the parties to that action remains what it is, vis-a-vis the Domestic Relations Court's Order, inclusive of all modifications thereto, as discussed herein.[14]

■ The Court feels obliged to address one additional issue raised by Plaintiffs. In opposing Defendants' Motion to Dismiss, Plaintiffs posed the argument that this Court is *the only* court which may assume jurisdiction. They cite *Visicon, Inc. v. Tracy*, 83 Ohio St.3d 211, 699 N.E.2d 89 (1998), for the proposition that because the Hope Hotel is situated on a

---

**14.** Had Plaintiffs herein not intervened as defendants in the Domestic Relations Court, the outcome would be different, as *Rooker–Feldman* would be inapplicable. Yet, complications would still exist with respect to the rights of D. Meyers, one of the Defendants herein. On the one hand, he would remain in the position of managing officer by virtue of the extant Domestic Relations Order, while on the other hand he would face the prospect of removal from that position in this Court. Because none of the currently recognized bases for abstention would apply neatly to such a situation, the Court might be obliged to exercise jurisdiction. *But see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) ("The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex [set] of considerations designed to soften the tensions inher-

ent in a system that contemplates parallel judicial processes."). Yet, even if it exercised its jurisdiction, as a matter of comity, proceeding in the face of a potentially conflicting state court order would give this Court pause. Accordingly, it would likely be that the Court would assume jurisdiction, but grant Defendants' alternative request for a stay. *See Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (stating that a district court has broad discretion to stay an action). The bottom line is that regardless of whether, for formalistic purposes, such a decision should be classified merely as a "stay" or as an "abstention," and even regardless of the jurisdictional issue, the major impediment to moving forward herein arises as a matter of comity, namely this Court's reluctance to take any action which might call into question the existing Order of the Domestic Relations Court.

United States Air Force Base, a federal enclave, only a federal court can assume jurisdiction over the *res*. The argument is inventive, but mistaken. In *Tracy*, the Ohio Supreme Court held that the Exclusive Legislation Clause [15] of the United States Constitution, taken alongside the Supremacy Clause,[16] proscribes the State's right to tax or regulate property or persons situated upon a federal enclave. 699 N.E.2d at 91–92. *Tracy* is inapposite because this case does not concern federal property or any federal interest, or the taxation or regulation thereof. It concerns the management of a privately owned business which only incidentally sits on federal property. The Hope Hotel is nothing more than the corporate shares of Visicon, property which bears no relation to Wright Patterson Air Force Base. While it may be true that the hotel is frequented by federal employees and their guests, the business of the United States Air Force is not hotel ownership or management, such that a state court order affecting the hotel's business would be an impingement on the sovereignty of the United States. In short, this Court is confident that the geographical situs of the Hope Hotel poses no bar to the Common Pleas Courts of Ohio taking jurisdiction over it.[17]

Of course, whether the Domestic Relations Division of the Common Pleas Court has jurisdiction over matters pertaining to corporate management is a separate question, but even then it is one of state law, and for the reasons stated above, in accord with the *Rooker–Feldman* doctrine, it is not for this Court to entertain.[18]

## II. *Conclusion*

For the foregoing reasons, the Court finds that it lacks jurisdiction over Plaintiffs' claims. Should the posture of the parties change from where they now stand in the Domestic Relations Court, it goes without saying that Plaintiffs are at liberty to re-file their Complaint. For the time being, pursuant to Fed.R.Civ.P. 12(b)(1), Defendants' Motion to Dismiss (Doc. # 12) is SUSTAINED.

As a result, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 6) and their Renewed Motion for same (Doc. # 21) are OVERRULED.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**15.** *See* U.S. Const. art. I, § 8, cl. 17 (granting Congress the power to "exercise exclusive Legislation in all Cases whatsoever ... over all Places purchased" by the United States); *cf. id.* art. IV, § 3, cl. 2 (granting Congress the power to make "all needful Rules and Regulations respecting the ... Property belonging to the United States").

**16.** *See id.* art. VI, cl. 2 (recognizing the federal constitution as the supreme law of the land).

**17.** In any event, to the extent Plaintiffs intend to argue that the Domestic Relations Court's Order exceeds its jurisdiction on this basis, as compared to its jurisdiction as granted by Ohio law, the argument is a federal defense which can be raised in that state court. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n. 11 (6th Cir.2002).

**18.** The Court notes with some interest that it has not been brought to its attention that K. Meyers, who as an 84% shareholder of Visicon would appear to have a much larger stake in these matters, has questioned the Domestic Relations Court's authority to consider issues of share ownership or corporate management pursuant to its jurisdiction over the divorce action.